## MILLER *et al.* v. OKLAHOMA STATE BANK OF ALTUS *et al.*

No. 4397.   Opinion Filed July 20, 1915.

Rehearing Denied May 19, 1916.

(157 Pac. 767.)

1. **TRIAL—Direction of Verdict—Evidence.** It is error for the court to peremptorily instruct a verdict in favor of plaintiff for a specific sum in a case tried by a jury where the evidence is conflicting, and upon which the jury. might reasonably find against the defendant in a less sum than that instructed by the court to be found for the plaintiff.

2. **USURY—Construction of Statute.** Section 1005, Rev. Laws 1910, relative to interest which may be charged or collected in this state, includes two conditions: (1) Where a greater rate of interest than 10 per cent. per annum is charged, reserved, or is agreed to be paid for the loan of money, but is not paid; (2) where such interest is charged and paid.

3. **USURY—Penalty—Action on Note—Set-Off.** In the case first cited, where suit is brought on the note, which includes illegal interest charged or agreed to be paid, the maker of the note may. in his answer, set up the unlawful charge or agreement to pay illegal interest, and the plaintiff will not be allowed to recover judgment for any sum other than the note, less double the amount of the interest charged or agreed to be paid, which the law declares forfeited.

4. **PLEADING—Answer—Cross-Petition.** Where in answer to a petition the defendant makes allegations proper in the answer, which alleges facts upon which affirmative relief may be based, and such affirmative relief is prayed for by such answer, the same will, in the absence of an objection thereto, be treated as a cross-petition, regardless of what name the pleader may apply to it.

5. **USURY—Recovery of Penalty—Set-Off.** Where the usurious interest has been paid on a note for extensions after maturity, in a suit to recover on the note against the maker who paid such interest, he cannot, over objection of plaintiff, set off against the note sued upon an amount equal to double the interest so paid by him; his remedy to recover such penalty when such objection is made being by a separate and independent action against the party to whom the usurious interest was paid.

6. **APPEAL AND ERROR—Scope of Review—Decision—Correction of Error.** So long as this court has jurisdiction over its judgments, when its attention is called to an erroneous order or decision, it will correct such error.

(Syllabus by the Court.)

*Error from District Court, Jackson County; Frank Mathews, Judge.*

Action by the Oklahoma State Bank of Altus, a corporation, against A. J. Miller and wife, S. H. Johnson and another interpleading. Judgment for plaintiff, and defendants bring error. Reversed and remanded.

*T. T. Clark* and *Gore & Horton,* for plaintiffs in error.

*Everett Petry,* for defendants in error.

BROWN, J. This action was originally brought by defendant in error Oklahoma State Bank of Altus against plaintiffs in error, A. J. Miller and Ettie Miller, on a promissory note originally for $1,325, given by A. J. Miller to B. D. Kelley, dated April 16, 1910, due October 15th, the same year, and to foreclose a mortgage of the same date given by plaintiff in error, A. J. Miller and Ettie Miller, upon certain lands in Jackson county to secure payment of said note. The note and mortgage were assigned by Kelley to the defendant in error. Four hundred dollars was paid and credited on the note March 3, 1911, and this action was to recover the balance alleged to be due thereon, with interest and attorney's fees.

The defendant A. J. Miller answered that the note was given for $1,200 borrowed by him from Kelley, and that the note on its face included $125, charged by Kelley as interest on the money borrowed, from the date of the note to the maturity thereof, and that said sum was in excess of the legal rate of interest, and therefore usurious, and prayed that plaintiff's demand be reduced by an amount double that of the usurious interest so charged. The answer further alleges that after maturity of the note payment thereof was extended from time to time, and that as consideration for such extensions, and of each of them, he paid the plaintiff bank interest exceeding the rate of 10 per cent. per annum. The answer alleges specifically the several sums of money paid as interest after maturity of the note, and the dates on which the same were paid, and that each of said payments exceeded the rate of 10 per cent. per annum for the time payment of the note was extended, and that the total amount of interest so paid was $227, and that Kelley and the bank received the interest payments, respectively, knowing. at the time they did so that such payments and interest exceeded 10 per cent. per annum. Defendant prayed that an amount double the $125 interest charged in the face of the note, and double the amount of the payments for the extension thereof, be deducted from the amount of plaintiff's demand. After plaintiff's general demurrer to the answer had been overruled, it replied to defendant's answer by general denial, and alleged specially that defendant had not made written demand for payment of any usurious interest charged on the contract sued on, and denied it had charged, taken, received, or reserved any unlawful or usurious interest thereon, and further alleged it stood ready to pay to defendant any and all sums the court might

find due defendant upon his cross-action, in excess of the rate of 10 per cent. per annum on said original obligation. Thereafter, on December 15, 1911, the bank filed what it denominated its "first supplemental reply," wherein it alleged, in substance, that at the time of filing its original petition, and at the time of filing its reply to defendant's answer, it was not aware of the amount of usurious interest charged, taken, or received by it on the note sued on, and that since filing its reply to defendant's answer, it had ascertained the amount of usurious interest charged or paid on the note, up to and including December 14, 1911, to be $135.50 and no more; and it is alleged that plaintiff in good faith tenders to defendant Albert J. Miller said sum, which has been paid into the hands of the clerk of the court subject to the further order of the court in said cause, and plaintiff thereby offers to purge the note sued on of all usurious interest that may be found to have been taken, reserved, or received thereon. Attached to plaintiff's supplemental reply as "Exhibit Z" is the clerk's receipt as follows:

"Received from Oklahoma State Bank for plaintiff one hundred, thirty-five and 50-100 dollars to apply on excess interest in case No. 612, entitled *Oklahoma State Bank, Plaintiff, v. Albert J. Miller et al., Defendants,* to be held subject to order of court.

"Ned McDaniel, Clerk of the District Court, Jackson County, Oklahoma."

Thereafter defendant Miller filed an amended answer, alleging substantially as did his original answer, and in addition thereto, among other things not necessary to state, that plaintiff failed and refused to pay or offer to defendant the sum which it paid into the hands of the clerk in this case, and that said sum is insufficient

to cover the amount of interest and forfeitures due defendant by reason of the interest payments and charges alleged in said answer. The answer also alleged a demand had been made of plaintiff for payment of all usurious interest theretofore paid by defendant. Both parties introduced evidence in support of their respective claims, at the conclusion of which the court peremptorily instructed the jury to return a verdict for plaintiff for the sum of $789.50, and interest at 10 per cent. per annum from July 1, 1911, which they did. Defendants below excepted to the action of the court, and in due time moved for a new trial, alleging numerous grounds therefor, among which was error of the court's peremptory instruction to the jury, and that the amount directed to be found in plaintiff's favor was too large, and the ground that there was conflicting evidence as to interest payments which the instructions took from the jury. The motion for new trial was overruled, and defendants-below excepted and bring error to this court on the following assignments:

"(1) The court erred in overruling motion of plaintiffs in error for a new trial. (2) The court erred in peremptorily instructing the jury to return a verdict for plaintiff in the sum of $789.50 and interest at 10 per cent. from July 1, 1911. * * * (5) The verdict of the jury is contrary to the evidence, and is not supported thereby. (6) The verdict of the jury is contrary to the law of the case. (7) The court erred in peremptorily instructing the jury to find for the plaintiff, there being conflicting evidence upon issues of fact which should have been submitted to the jury for its determination, said instruction having been given over the objection and exception of plaintiff in error. (8) The court erred in refusing to permit A. J. Miller, one of the plaintiffs in error and defendant in the lower court, to recover upon

his plea of reconvention, set-off, and counterclaim double the amount of all the interest paid by him upon the note sued upon in this case."

This court on a former day of this term affirmed the judgment of the trial court in favor of defendant in error bank for the sum found by the jury and foreclosing the mortgages sued on in favor of the bank against both A. J. Miller and Ettie Miller, and the case is now before us on plaintiffs in error's petition for rehearing.

· The record before us presents two errors committed by the trial court for which, in our opinion, the case must be reversed. Upon the trial of the case B. D. Kelley, president of the plaintiff bank, and payee in the note sued on, testified that the sum of money loaned A. J. Miller, on the date of the note, was $1,200, and that $125 written in the face of the note was interest charged on said sum from the date of the note until the maturity thereof, six months thereafter. Kelley also testified that $400 was paid on the note March 3, 1911, and that, after maturity thereof, the note was extended from time to time, and that in consideration of such extensions, Miller paid as interest therefor certain sums aggregating $177.50, which are shown by his evidence to be usurious. Kelley admitted that illegal interest had been received from Miller by the bank, and stated that the bank deposited with the clerk $135, which he testified was the excess of interest paid by Miller over and above the legal rate of 10 per cent. per annum from the maturity of the note to October 1, 1911. The interest payments which Kelley admitted were made by Miller after maturity of the note, and for the several extensions thereof, aggregated $177.50, while the defendant A. J. Miller testified positively to specific interest payments made the bank

after the maturity of the note, for extensions thereof, which, if paid as Miller testified they were, aggregated $227.50, corresponding with the allegations in Miller's answer, he having testified to two interest payments of $25 each, which Kelley denied had ever been paid, and which, if paid, were each usurious. The premeptory instruction given the jury by the trial court in effect directed them to find for plaintiff in the sum of $925 sued for, less $135.50 deposited by the bank with the clerk as interest charged and received by the bank in excess of the legal rate of 10 per cent. on the sum originally loaned defendant Miller, thus ignoring the testimony of A. J. Miller as to other interest payments made by him. The conflict in the evidence between Kelley and Miller clearly presented an issue of fact which the court should have left to the jury, and it was error for the court, in its peremptory instruction for a verdict, to ignore Miller's testimony as to usurious interest payments by him. Such has been the repeated holding of this court. One of the latest cases announcing the proposition stated is *Frick-Reid Supply Co. v. Hunter,* 47 Okla. 151, 148 Pac. 83, wherein it is stated, quoting from the syllabus:

"The question presented to a trial court on a motion to direct a verdict is whether, admitting the truth of all the evidence that has been given in favor of the party against whom the action is contemplated, together with such inferences and conclusions as may be reasonably drawn therefrom, there is enough competent evidence to reasonably sustain a verdict, should the jury find in accordance therewith."

If the question of the amount of these interest payments had been left to the jury, and they had found the sum paid was $227.50, it cannot be said such finding would not have been supported by Miller's testimony.

The instruction of the court was error. The district court held that, the bank having tendered to Miller a sum equal to the interest charged and received by it in excess of legal interest on the note sued on, Miller could set off against the note only the amount of such excess, and that plaintiff was entitled to judgment for the balance sued for. The uncontroverted evidence in the case shows that at the time the defendant A. J. Miller executed the note sued on, he borrowed from Kelley, the payee therein, $1,200 and that $125 of the amount written in the face of the note was for interest on said sum for six months. It is further admitted by Kelley, who was president of the bank, that after maturity of the note, payment thereof was extended from time to time, in consideration of which defendant was charged and paid usurious interest, which, Kelley said, aggregated $177.50, but according to the testimony of A. J. Miller aggregated $227.50. Both parties testified that in March, 1911, $400 was paid, which sum Miller testified was paid on the principal of the note. Kelley figured the legal rate of interest on the note from its date to July 1, 1911, which he said was the last date to which interest was paid, and stated that the amount of such interest was $169; this he deducted from the $125 illegal interest charged at the making of the note and $177.50, which he said was paid after maturity of the note, thus leaving $133.50 as the excess of the illegal interest charged and paid, and, making a mistake, he says, of $2, he deposited this excess in the hands of the district clerk for defendant Miller, viz., $135.50. Miller claimed that an amount double $125, the interest charged in the face of the note at the date of its execution, and double the $227.50 paid for extensions should be deducted from plaintiff's demand. As before stated,

the court adopted the contention of the bank, and peremptorily instructed the jury to return a verdict in favor of the bank for the amount sued for, less $135.50, deposited for the benefit of defendant, as the excess of interest charged him and paid by him over and above 10 per cent. per annum upon the note sued on. The verdict of the jury in accordance with the instruction is made the basis of the judgment of the court.

The conflicting contentions of the parties call for our construction of sections 1004 and 1005, Rev. Laws 1910, which are as follows:

Section 1004. "The legal rate of interest shall not exceed six per cent., in the absence of any contract as to the rate of interest, and by contract parties may agree upon any rate not to exceed ten per cent. per annum. Said rates of six [per cent.] and ten per cent. shall be respectively, the legal rate and the maximum contract rates of interest."

Section 1005. "The taking, receiving, reserving or charging a rate of interest greater than is allowed by the preceding section shall be deemed a forfeiture of twice the amount of interest which the note, bill or other evidence of debt carries with it, or which has been agreed to be paid thereon. In case a greater rate of interest has been paid, the person by whom it has been paid, or his legal representatives, may recover from the person, firm or corporation taking or receiving same, in an action in the nature of an action of debt, twice the amount of the interest so paid. Provided, such action shall be brought within two years after the maturity of such usurious contract; provided, further, that before any suit can be brought to recover such usurious interest, the party bringing such suit must make written demand for return of such usury."

It will be observed that section 1004, *supra,* fixes the maximum rate of interest to be contracted for at 10 per cent. per annum, while section 1005 provides for two conditions: (1) Where interest exceeding the legal rate has been charged, but not paid; and (2) where it has been charged and paid.

Under the first condition the lender of money by the act of charging illegal interest thereby forfeits twice the amount of the interest which the note carries with it, or which has been agreed to be paid thereon, and in case he sues for collection of the note and the payor pleads such illegal interest charge, it is uniformly held that it will be the duty of the court to limit the plaintiff's recovery to the amount of the note, less the forfeiture fixed by the statute. Our usury statute is similar to that of the State of North Dakota, except for minor changes. Section 4066, Rev. Codes 1899, of North Dakota, reads as follows:

"The taking, receiving, reserving or charging a rate of interest greater than is allowed by section 4064, when knowingly done, shall be deemed a forfeiture of the entire interest which the note, bill or other evidence of debt carries with it or which has been agreed to be paid thereon. In case the greater rate of interest has been paid the person by whom it has been paid, or his legal representatives, may recover back in an action for that purpose twice the amount of the interest thus paid from the person taking or receiving the same; provided, such action is commenced within two years from the time the usurious transaction occurred."

In the case of *Waldner v. Bowden State Bank,* 13 N. D. 604, 102 N. W. 169, 3 Ann. Cas. 847, the Supreme Court of North Dakota, construing the section of this statute just quoted, says:

"The latter section provides for a penalty for usurious transactions under two independent conditions: (1) When usury rests in contract, and has only been charged; (2) When it has been paid. In cases where usury has been charged and not paid, and the usurer brings an action on his contract, the illegality of the contract may be alleged as a defense, and, if proven, the entire interest due upon the contract becomes forfeited, and no recovery can be had upon the contract, except as to the principal sum loaned."

It will be noticed that in the Dakota statute, the forfeiture is the entire interest charged, while under our statute it is declared to be double the interest charged, received, reserved, or agreed to be paid. The case of *Farmers' & Merchants' Nat. Bank of Buffalo v. Deering*, 91 U. S. 29, 23 L. Ed. 196, was a suit on a note on which usurious interest had been charged, but not paid, and it was held by the United States Supreme Court, quoting from paragraph 3 of the syllabus:

"Such bank is entitled to recover the principal of the note, less the amount of interest unlawfully reserved."

And in *Citizens' Nat. Bank v. Donnell*, 195 U. S. 369, 25 Sup. Ct. 49, 49 L. Ed. 238, the same court said:

"A national bank whose action on a promissory note is met by the plea of usury may not avoid the forfeiture of the entire interest, imposed by Rev. Stat. U. S. sec. 5198 (U. S. Comp. Stat. 1901, p. 3493) in absolute terms, by then declaring an election to remit the excessive interest."

From our investigation of the authorities, it appears the courts uniformly hold a debtor can defend against the payment of any interest, either legal or usurious, in a suit on a note on which usurious interest

has been charged but not collected, and that to such extent the plaintiff's demand will be reduced.

But where usurious interest has been paid, it is held that a different rule applies, and that in such case the debtor must bring a separate and independent action to recover double the interest paid, provided for by the statute. Such is the established rule declared by the decisions of the United States Supreme Court, as to such interest paid to national banks, under the United States usury statute, which, as to the recovery of usurious interest paid, is similar to ours. Section 5198, U. S. Rev. Stat. (section 9759, U. S. Comp. Stat. 1913), provides:

"The taking, receiving, reserving or charging of a rate of interest greater than is allowed by the preceding section, when knowingly done, shall be deemed a forfeiture of all the interest which the note, bill or other evidence of debt carries with it, or which has been agreed to be paid thereon. In case a greater rate of interest has been paid, the person by whom it has been paid or his legal representative, may recover back, in an action in the nature of an action of debt, twice the amount of the interest so paid, from the person receiving the same, provided such action is commenced within two years from the time the usurious transaction occurred."

The provisions of the statute just quoted are substantially the same as section 1005, Rev. Laws Okla. 1910, with the exception that under the United States statute the interest must be knowingly taken, received, reserved, or charged, while in our statute the word "knowingly" is omitted, and the forfeiture provided is double the interest. And in an action to recover double the interest under our statute, written demand therefor must be first made by the party bringing the suit, which

is not required in the United States statute. In the case of *McCarthy v. First Nat. Bank*, 23 S. D. 269, 121 N. W. 853, 23 L. R. A. (N. S.) 335, 21 Ann. Cas. 439, the Supreme Court of South Dakota, construing the United States statute above quoted, says:

"It will be noticed that there are two entirely different parts to section 5198, *supra*: The first provides for forfeiture of all interest unpaid when usury has been contracted for, and such usury enters into the note or the consideration for such note; the second provides for an action to recover as a penalty double all interest paid whenever such interest so paid is in part usurious. The courts uniformly hold that under the first a debtor can defend against the paying of any interest, either legal or usurious; while, on the other hand, if, in fact, he has made any payment or payments on interest, even to the extent of paying usurious interest, he cannot plead such payment either as a credit on the principal or as an offset or counterclaim to the principal, but his only remedy for such usury paid is found in the second part of said section, and consists solely in his right in a separate suit brought under the second part of said section to recover the penalty therein provided for. In other words, that the common-law remedy by a suit or counterclaim for money had and received will not lie."

In support of which is cited *Schuyler Nat. Bank v. Gadsden*, 191 U. S. 451, 24 Sup. Ct. 129, 48 L. Ed. 258, and a number of other decisions.

We, therefore, hold that under the first subdivision of section 1005, Rev. Laws 1910, the charging of a rate of interest greater than 10 per cent. per annum for money loaned, or upon any evidence of debt, *ipso facto* works a forfeiture of twice the amount of the interest which the note, bill, or other evidence of debt carries with it, or which has been agreed to be paid thereon, and,

following the uniform decisions of other states under similar statutes, we further hold that, in a suit for the collection of such debt, the debtor may allege and prove such illegal charging of interest or agreement to pay the same, and thereupon it will be the duty of the trial court, by proper holding or instruction, to cause the amount of such forfeiture to be deducted from the amount of the note or other evidence of debt sued on; this, not as compensation or an amount due the defendant or debtor, but for the reason that the courts, in such cases, will not permit the recovery of the forfeiture declared by law, in consequence of the wrongful act referred to. We also hold that under the second subdivision of said section 1005, where the borrower of money pays therefor a greater rate of interest than 10 per cent. per annum, he, or his legal representatives, may, within two years after maturity of such usurious contract, recover from the person, firm, or corporation taking or receiving such interest twice the amount of the interest so paid, provided that, before bringing such suit, the party bringing the same must make written demand of the party to be sued for payment of the sum so authorized by the statute to be recovered.

The rule just stated, authorizing one who has paid a greater rate of interest than 10 per cent. per annum to recover from the party taking or receiving the same twice the amount of interest so paid, is in line with the uniform decisions of the United States Supreme Court, beginning with the case of *Farmers' & Merchants' National Bank v. Dearing*, 91 U. S. 29, 23 L. E. 196, construing section 5198, U. S. Revised Statutes, *supra*. But, as hereinbefore stated, it is also held by the United States Supreme Court, under the federal statutes, that

the remedy by the debtor for double the usurious interest paid can be had only in a separate and independent suit against the party receiving such interest, and it cannot be pleaded in set-off or counterclaim in an action to recover a debt on which the interest was paid. The decisions of the United States Supreme Court are followed by the highest courts of a great number of the states (having similar statutes), and in usury cases by or against national banks, or arising under the federal statutes. See *Farrow v. First Nat. Bank,* 47 S. W. 594, 20 Ky. Law Rep. 1413; *Nat. Exchange Bank v. Boylen,* 26 W. Va. 554, 53 Am. Rep. 113; *Charleston National Bank v. Bradford,* 51 W. Va. 255, 41 S. E. 153; *Merchants' National Bank of Portland v. Starkey,* 64 Or. 32, 128 Pac. 1005; *Chipman v. Farmers' & Merchants' Nat. Bank,* 121 Md. 343, 88 Atl. 151; *National Bank of Weston v. Lynch,* 69 W. Va. 333, 71 S. E. 389. Also see *Reese v. Colquitt Nat. Bank,* 12 Ga. App. 472, 77 S. E. 320; *Rushing v. Citizens' National Bank of Plainview* (Tex. Civ. App.) 162 S. W. 460.

The construction given section 5198, U. S. Rev. Stat., by the United States Supreme Court, as above stated, is also herein held by this court to be the effect of subdivision 2, sec 1005, *supra;* while it is the opinion of the writer that, under our procedure, a debtor who has paid the greater rate of interest on his note may, by cross-petition, plead such payment in an action on the note by the party to whom the interest was paid, other than a national bank, and, upon proof thereof, he is entitled to have the plaintiff's demand reduced in double the amount of interest so paid. In support of this contention, reference is made to the following authorities: Section 4745, Rev. Laws 1910, provides what may be

pleaded in the answer to an action in this state as follows:

"The answer shall contain * * * Third. When relief is sought, the nature of the relief to which the defendant supposes himself entitled. The defendant may set forth, in his answer, as many grounds of defense, counterclaim, set-off, and for relief, as he may have, whether they be such as have been heretofore denominated legal, or equitable, or both. Each must be separately stated and numbered, and they must refer, in an intelligible manner, to the causes of action which they are intended to answer."

Under section 4747, *Id.*, a set-off can be pleaded in defense to an action founded on contract where the set-off is a cause of action arising upon a contract. In the case of the *State Bank of Paden v. Lanam*, 34 Okla. 485, 126 Pac. 220, this court held an action to recover double the amount of usurious interest paid was an action on an implied contract, and the doctrine announced in that case was reaffirmed in the case of *Yates v. First National Bank of Mill Creek*, 42 Okla. 95, 140 Pac. 1174. In *Fanson v. Linsley*, 20 Kan. 235, it is held (syllabus, paragraph 1):

"A cause of action founded upon an implied contract may be the subject of set-off."

In *Challiss v. Wylie*, 35 Kan. 506 (syllabus, paragraph 1) 11 Pac. 438, it is said:

"Where the agent or clerk of a principal is guilty of the embezzlement of his principal's goods, the principal may waive the tort if he chooses, and treat his cause of action against his agent or clerk as one arising upon an implied contract; and if the agent or clerk is the owner of a note executed by the principal, in an action thereon the principal may plead as a set-off to the note the value

of his goods embezzled and converted to his own use by his agent or clerk."

Section 4746, Rev. Laws 1910, provides that either party to an action—

"can plead and prove a set-off or counterclaim of the proper nature, in defense to the liability sought to be enforced by the other party, and it shall not be necessary that such set-off shall exist as between all parties plaintiff and defendant in such suit, but any party may enforce his set-off or counterclaim against the liability sought to be enforced against him."

In *Resetti v. Lozano*, 96 Tex. 57, 70 S. W. 204, which was a suit on a note on which usurious interest had been paid, it was held by the Texas Supreme Court, after defining the usury statutes of the state, that in said action the defendant might set up payment of such usurious interest by a plea of reconvention and obtain judgment therefor against the plaintiff in the same action. In the opinion, beginning at page 59 of 96 Tex., at page 205 of 70 S. W., it is said:

." 'All written contracts whatsoever which may in any way, directly or indirectly, violate the preceding article by stipulating for a greater rate of interest than ten per cent. per annum shall be void and of no effect for the amount or value of the interest only; but the principal sum of money or value of the contract may be received and recovered.'

" 'If usurious interest, as defined by the preceding articles, shall hereafter be received or collected, the person or persons paying the same, or their legal representatives, may by action of debt, instituted in any court of this state having jurisdiction thereof, within two years after such payment, recover from the person, firm, or corporation receiving the same, double the amount of the interest so received or collected.'

· "In our opinion, the recovery provided for in the latter article can only be had in 'an action' therefor, and not merely by a purely defensive pleading, setting up usury and payment. This right of recovery is a cause of action, and not a mere defense, and the statute which gives it prescribes that it is to be recovered in 'an action of debt." Under the United States statute, which, in very similar language, gives such a right of action against national banks, it is held by the Supreme Court of the United States that the only remedy is an original action for the penalty alone. *Barnes v. National Bank,* 98 U. S. 559 [25 L. Ed. 212]. Many other cases to the same effect may be found cited in the annotation of the principal case in 9 Rose's Notes on United States Reports. As this is the construction of a Federal statute, it has been followed in this state on actions based on that statute. *Huggins v. Bank,* 6 Tex. Civ. App. 34] 24 S. W. 926], in which a writ of error was refused by this court. The present action is governed by our own statute, in adopting which the Legislature must have had in mind the established principles and rules here in force governing forms of action and modes of proceedings. By 'action of debt,' the Legislature did not, we think, mean to require that the action be technically that action known as such at common law, for the reason that we have no forms of action. Still it is true that the provision gives only a right to recover the penalty by some action for it, as for a debt. It does not follow, however, that an original action is essential. We have always had in use the plea in reconvention, by which a defendant may affirmatively assert against plaintiff a cause of action of his own, provided it has the necessary connection with that set up by the plaintiff. This, under our system, is a permissible way in which an action may be prosecuted, and we think it should be held that the Legislature contemplated that it might be adopted in cases like this, where plaintiff sues on the debt upon which he has received unlawful interest.

"The defendant could not in this case recover the penalty claimed by him in any way, without a basis in the pleading, and that basis must, in our opinion, be a plea sufficiently setting up a cross-action against plaintiff for the penalty."

It will be noticed that the Texas court refers to its "plea of reconvention" as a cross-action by defendant against the plaintiff. The two mean one and the same thing. The same practice is recognized by the Oklahoma courts under the name of cross-petition. In the case of *Brown, Tutt & Beadles v. Massey*, 19 Okla. 482, 92 Pac. 246, it is held (syllabus, paragraph 1):

"Where, in an answer to a petition, the defendant makes allegations proper in his answer, which alleges facts upon which affirmative relief may be based, and such affirmative relief is prayed for by such answer, the same will be treated by the court as a cross-petition, regardless of what name the pleader may apply to it."

Section 1005, *supra*, provides that, where usurious interest has been paid, twice the amount thereof may be recovered from the person receiving the same, in an action in the nature of an action of debt. An action to recover a debt may have set off against it a debt due by the plaintiff to the defendant. Like the State of Texas, we have no common-law form of practice, and under the authorities above cited and our liberal code practice, by which it is sought, as much as possible, to avoid a multiplicity of suits, I am clearly of the opinion that one who has been sued on a note, other than a national bank debt, and upon which he has paid usurious interest, may, by proper pleadings in the same action, set up such payment and thereupon recover of plaintiff in such action double the interest so paid, and that such judgment should be deducted from any judgment in plaintiff's favor on the note, and execu-

tion allowed only for the balance thereof, if any, and in case the defendant's judgment exceeds that of the plaintiff, then execution should issue in his favor for such excess. Of course the rule just stated does not apply in a suit to recover for usurious interest paid a national bank; the United States Supreme Court having otherwise settled such cases. We are construing our own statutes and laws and the rights of citizens thereunder.

It is true that to give our statute the construction I have contended for would, as contended by the other members of the court, result in a double standard of procedure in enforcing the remedy of a debtor who has paid usurious interest on his debt, that is, in actions for such interest paid national banks, he would be required to bring a separate action, while in case such interest was paid to a state bank, or upon other contracts not controlled by the United States statute, he could avail himself of the statutory remedy by a cross-petition or cross-action when sued for the recovery of the debt upon which such interest was paid. But in my judgment the reasons thus given by my Brethren do not furnish sufficient cause for burdening defendants in actions, other than for the recovery of debts due national banks, with the expense and annoyance of a separate suit, and to do so, I think, is contrary to the established policy to avoid a multiplicity of lawsuits. But in the case at bar the question of a separate action by the defendant is not involved, since his answer to plaintiff's action is in the nature of a cross-petition against plaintiff, coming within the rule found in *Brown, Tutt & Beadles v. Massey, supra,* and plaintiff, by his reply thereto, admitted the receipt of usurious interest, and has tendered the defendant Miller the amount the

bank considered he was entitled to recover by reason of the payment of such interest.

It was contended by plaintiff below that the amount a party, who has paid usurious interest, is entitled to recover under section 1005, *supra,* is limited, by the last proviso to said section, to interest paid in excess of the legal rate. The contention is not tenable. Such proviso relates only to the procedure for the recovery of the sum above authorized to be sued for. What the Legislature meant by the proviso referred to is that, before bringing suit for double the amount of the interest paid, the party entitled thereto must make written demand for the amount the statute authorizes to be recovered by his suit. To hold that upon demand for usurious interest paid (which the statute requires must be done before bringing the suit), the usurer could pay the interest received by him above the legal rate, and thereby escape further liability, would entirely defeat the purpose and intention of the statute to punish usurers. It would be an inducement to collect their usury in advance, and enjoy the same until demand were made therefor, and then return the excess only, without any liability for their illegal act. Such, to our mind, was never contemplated by the statutes. In the case of *Baum v. Daniels,* 55 Tex. Civ. App. 273, 118 S. W. 764, the Court of Civil Appeals of Texas held:

"The term 'usurious interest' shall be construed to mean 'unlawful interest,' and hence was not limited to the excess over the lawful rate, but included all interest received and collected under a contract providing for more than 10 per cent."

Applying the law as we understand it to the evidence in this case, we think the defendants in the court below were entitled to have deducted from plaintiff's note double

the amount of interest originally charged and added in the face of the note, and also judgment against plaintiff for double each payment of interest paid for the extension of the note after the maturity thereof, and to have such judgment deducted from plaintiff's claim sued for, and the trial court erred in holding that the plaintiff's demand should only be reduced in the amount of interest paid in excess of the legal rate of 10 per cent. thereon. The court also erred in its peremptory instructions in excluding from the consideration of the jury the conflicting testimony of the plaintiff's president and the defendant, A. J. Miller.

Counsel for defendant in error contends that the petition for rehearing in this case should not be heard by this court, because, first, rules 5 and 9 (38 Okla., v, ci, 137 aPc. ix) of this court, in reference to notice at the time of filing said petition, have not been complied with. Rule 5 provides:

"Application for rehearing in any cause unless otherwise ordered by the court, shall be made by petition to the court, signed by counsel and filed with the clerk within 15 days from the date on which the opinion in the cause is filed."

The opinion in this case was filed April 27, 1915. Petition for rehearing was filed May 12, 1915, which was on the 15th day after the opinion was filed, and thus was within the time prescribed by rule 5. Rule No. 9 provides:

"No motion shall be considered, unless reasonable notice has been given counsel on the opposite side of the case, except where in the opinion of the court an emergency exists."

Miller et al. v. Oklahoma State Bank of Altus et al.

On May 18th counsel for defendant in error accepted service of notice of filing the petition for rehearing. The question whether such notice is reasonable is answered by the fact that counsel prepared and filed in this court, on June 10th, his brief and argument on the petition for rehearing. Defendant in error alleges, as a second cause why the petition for rehearing should not be considered by this court, as follows:

"No grounds for rehearings are set forth as required in rule 9. An examination of the alleged controlling decisions or express statute will disclose that they are merely general authorities from other states on the questions already considered by the court, and are in no wise binding or controlling on this court."

We do not think this objection should prevail. The petition for rehearing calls the attention of the court to errors of the trial court for which the case should be reversed, and which were overlooked in the former decision of the court. This court may, in its discretion, reconsider its judgment in any cause while it has jurisdiction thereof, and when its attention is called to errors in said judgment, it will ordinarily correct the same. In the brief of the defendant in error, in resistance to the petition for rehearing, counsel states as follows:

"We are resting our case squarely upon the proposition that the defendant below based his right of recovery by way of set-off under the second sentence of the section referred to [section 1005] as interest actually paid, and, having lost, cannot now change his theory and seek a reversal of the case upon a theory not within the issues made by the pleadings or presented to the trial court. Reference to the amended answer of the defendant found at pages 119-127 of the record completely settles this question."

The contention of counsel for defendant in error is that the $125 interest charged in the face of the note sued on was paid and satisfied by a cash payment of $400 made by Miller, March 3, 1911, and credited on the note, reducing the same to $925, and that therefore defendant's right to a set-off against plaintiff's claim is controlled by the second provision of section 1005, allowing double the amount of interest actually paid. While the answer of the defendant apparently admits that the $400 cash payment was applied to the interest originally charged in the face of the note sued on, as, he says, is alleged in plaintiff's petition, we find no such allegation in the petition. The petition alleges the payment of the $400, March 3, 1911, without any statement as to its application, and, in Miller's testimony at the trial, in answer to a question propounded by Mr. Petry, attorney for the bank, Miller said the $400 payment was not interest, the question and answer being as follows:

"Q. There was no extension granted in consideration of that— That $400 wasn't interest paid, was it?  A. No, sir; that was credited on the note to cut down the note."

This testimony was not contradicted. In the case of *First National Bank of Mill Creek v. Langston*, 32 Okla. 795, 799, 124 Pac. 308, 309, this court held:

"While it is the general rule that no evidence is admissible except such as is warranted by the pleadings, it is equally true that variances are not considered material unless the adverse party has been mislead thereby to his prejudice."

No claim is made by defendant in error that it was surprised by reason thereof. But we fail to see where defendant in error is to be benefited by considering the $400 cash payment as being in satisfaction of usurious

interest charged at the date of the note, which, if paid, Miller would nevertheless be entitled to recover double the amount thereof.

Counsel for defendant in error claims plaintiff did not sue for any usurious interest. Let us see. The original note was for $1,325, which included $125, usurious interest. The $400 cash payment was deducted from the face of the note, leaving $925, which is the amount sued for. Where cash is paid on a note tainted with usury, the amount thereof will be applied as a credit on the principal. *Hall v. First National Bank of Fairfield,* 30 Neb. 99, 46 N. W. 150; *First National Bank of North Bend v. Miltonberger,* 33 Neb. 847, 51 N. W. 232; *Bank of Cadiz v. Slemmons et al.,* 34 Ohio St. 142, 32 Am. Rep. 364. Application of this rule to the present case would show plaintiff's action included $125, usurious interest originally charged on the loan to Miller.

Counsel also cites numerous authorities and argues at length to show what is meant by the abstract definition of "usury." The answer to this argument is that our statute does not provide for the recovery of "usury" in its abstract sense, but provides that where interest has been paid greater than 10 per cent. per annum, the party paying the same may recover double the sum so paid, where the action therefor is within two years after maturity of the usurious contract and after due demand for payment of the sum entitled to be recovered.

For the reasons heretofore stated, we think the petition for rehearing should be granted, and the judgment of the court below reversed, and the case remanded; and it will be so ordered.

All the Justices concur.