## UNITED STATES FIDELITY & GUARANTY CO. v. JOHN R. ALLEY & CO., Inc., et al.

No. 2018.

District Court, W. D. Oklahoma.

July 26, 1940.

---

Lynn Bullis, Jr., of Oklahoma City, Okl., for plaintiff.

James S. Twyford, of Oklahoma City, Okl., for John R. Alley.

Byrne Bowman, of Oklahoma City, Okl., for Walter T. Jones, receiver for John R. Alley & Co.

Mark Goode, of Shawnee, Okl., for Federal National Bank of Shawnee.

VAUGHT, District Judge.

John R. Alley and Company, Inc., entered into a contract with the State Highway Commission of Oklahoma for the construction of a certain highway within the state of Oklahoma, and the plaintiff executed for Alley and Company a contractor's bond, guaranteeing the faithful performance of said contract and guaranteeing the payment of all labor and material claims. Alley and Company completed the work under the contract but defaulted in the payment of labor and materialmen's claims, and it became necessary for the bonding company, under the terms of its bond, to assume and pay said obligations. The bonding company filed this suit for the purpose of having determined all valid claims against the contractor and also to determine its right and the rights of other claimants to any funds held by the Highway Commission for the purpose of paying the contract price for the construction of said highway.

Hereafter, John R. Alley and Company, Inc., will be referred to as the contractor.

The Federal National Bank of Shawnee, Oklahoma, filed its answer in the cause and alleged that the contractor was indebted to it in the sum of $5,177.16, the balance due on loans by the bank to said contractor, which indebtedness was represented by notes held by the bank, and claims an assignment of contractor's estimates as security.

Numerous other defendants filed their answers and set up their claims, the priority of which will be hereinafter determined.

The contractor filed an amended answer in which it pleaded that, under four separate contracts with the State Highway Commission, it entered into an agreement with the bank whereby the contractor agreed to pay to the bank a bonus of five per centum based on the amount of each of said contracts, in addition to the ten per centum rate of interest provided in the notes.

In the first cause of action, the contractor alleged that in July, 1936, under the Love County contract involving approximately $20,000, it borrowed from the bank the sum of $5,000; that it executed a note for $5,000; that it received credit for said amount upon the books of the bank and immediately withdrew $1,000 for the five per cent. bonus on said contract and paid said sum to an officer of the bank.

In the second cause of action, the contractor alleged that in October, 1936, under the Pittsburg County contract involving approximately $20,000, it borrowed from the bank the sum of $3,700; that it executed a note for $3,700; that it received credit for said amount upon the books of the bank, and immediately withdrew $1,000 for the five per cent. bonus on said contract and paid said sum to an officer of the bank.

In the third cause of action, the contractor alleged that in January, 1937, under the Carter County contract involving approximately $50,000, it borrowed from the bank the sum of $5,500; that it executed a note for $5,500; that it received credit for said amount upon the books of the bank, and immediately withdrew $2,500 for the five per cent. bonus on said contract and paid said sum to an officer of the bank.

In the fourth cause of action, the contractor alleged that in February, 1937, un-

der the Washington County contract involving approximately $10,000, it borrowed from the bank the sum of $2,125; that it executed a note for $2,125; that it received credit for said amount upon the books of the bank, and immediately withdrew $500 for the five per cent. bonus on said contract and paid said sum to an officer of the bank.

The contractor further alleged that it paid the bank a total of $5,000 in bonuses and, in addition thereto, had paid $777.60 in interest on said notes, or a total of $5,777.-60, and it asks judgment against the bank in double said sum, or $11,555.20.

The allegations of said answer are denied by the bank, and said issues are involved in the trial of this case as between the bank and the contractor.

The testimony of the contractor is that in every instance it paid the cash, as above alleged, to one Ellis, who was vice president of the bank and who received said sums as a commission. Ellis is now deceased and his testimony, therefore, is not available.

█ Much of the testimony of the contractor is corroborated, but the records of the bank do not disclose that this money was received by the bank, yet if the money was received by an officer of the bank in his official capacity in a transaction with the bank, the bank will be considered to have received the money whether the records disclose it or not.

The court is satisfied that the contractor made this agreement with Ellis, as is disclosed by the record, and that at the time the bank made these various loans to the contractor, it actually received $5,000 less than the face of the notes.

The purpose of this action was to determine what claims were outstanding against the contractor for which the bonding company would be liable. One material question for determination is what amount the contractor owed the bank at the time it failed to carry out its contract with the State Highway Commission.

Another question is whether or not in an action of this character the contractor could by this pleading raise the question of usury.

The bank contends that it did not receive this money and that under no circumstances could the contractor maintain an action for usury in this particular case.

The bank duly filed its motion to dismiss the amended answer of the contractor on the ground that an action to recover usury must be an independent action and could not be filed as a setoff or a counterclaim to an action on the primary obligation.

Title 12 U.S.C.A. § 86 is as follows: "The taking, receiving, reserving, or charging a rate of interest greater than is allowed by the preceding section, when knowingly done, shall be deemed a forfeiture of the entire interest which the note, bill, or other evidence of debt carries with it, or which has been agreed to be paid thereon. In case the greater rate of interest has been paid, the person by whom it has been paid, or his legal representatives, may recover back, in an action in the nature of an action of debt, twice the amount of the interest thus paid from the association taking or receiving the same: Provided, That such action is commenced within two years from the time the usurious transaction occurred."

█ It will be noted that this section of the statute includes the words, "in an action in the nature of an action of debt." The remedy to collect usury is in the nature of a penalty and under the terms of the statute the remedy is by an independent action.

In Barnet v. Muncie National Bank, 98 U.S. 555, 558, 25 L.Ed. 212, the court said: "Where a statute creates a new right or offense, and provides a specific remedy or punishment, they alone apply. Such provisions are exclusive."

In McCollum v. Hamilton National Bank, 303 U.S. 245, 58 S.Ct. 568, 570, 82 L.Ed. 819, which case is cited by both parties, the court said: "The penalty is to be enforced according to the terms of the statute. Guilt being established, the law itself fixes the punishment at precisely twice the usurious exaction paid; it may not be enhanced or mitigated because of aggravating circumstances or equitable considerations. As the sum demanded is certain, recovery in an action of debt is authorized, though the claim arises not in contract but in tort. Chaffee & Co. v. United States, 18 Wall. 516, 538, 21 L.Ed. 908. The liability can only be enforced in an action 'brought specially and exclusively for that purpose— where the sole issue is the guilt or innocence of the accused, without the presence of any extraneous facts which might confuse the case.' Barnet v. National Bank, 98 U.S. 555, 559, 25 L.Ed. 212. One paying a national bank usurious interest and entitled to enforce the penalty may not recov-

er it by way of set-off in a suit brought upon his note to the bank. Haseltine v. Central Bank, 183 U.S. 132, 137, 22 S.Ct. 50, 46 L.Ed. 118; Barnet v. National Bank, supra; Driesbach v. National Bank, 104 U.S. 52, 26 L.Ed. 658; Stephens v. Monongahela Bank, 111 U.S. 197, 4 S.Ct. 336, [337], 28 L.Ed. 399; See Schuyler National Bank v. Gadsden, 191 U.S. 451, 456, 24 S.Ct. 129, 48 L.Ed. 258." And the opinion concludes: "Punishment for usury does not depend upon payment of the borrower's debt. It follows that respondent is not entitled to satisfy petitioner's judgment by deducting the amount of it from respondent's claim against the bankrupt's estate."

In Schumacher v. Lawrence, 108 F.2d 576, 577, the Circuit Court of Appeals. Sixth Circuit, said: "Appellant contends that this was error, urging that under § 86, Title 12, U.S.C., 12 U.S.C.A. § 86, usurious interest which has been paid must be recovered back in an independent action; that this remedy is exclusive, and that the federal statute controls. This clearly is the law. The latest statement of the rule is found in McCollum v. Hamilton National Bank, 303 U.S. 245, 58 S.Ct. 568, 82 L.Ed. 819. In that case the judgment of the state court applying usurious interest as a credit upon a debt of a bankrupt estate was reversed. The Supreme Court said: 'One paying a national bank usurious interest and entitled to enforce the penalty may not recover it by way of set-off in a suit brought upon his note to the bank.' 303 U.S. page 247, 58 S.Ct. page 570, 82 L.Ed. 819. ·The court declared that the right of set-off does not at all depend upon the state statute. Other decisions to the same effect are Haseltine v. Central Bank of Springfield, 183 U.S. 132, 137, 22 S.Ct. 50, 46 L.Ed. 118; Barnet v. National Bank, 98 U.S. 555, 559, 25 L.Ed. 212."

The case of McCollum v. Hamilton National Bank, supra, seems to be the last expression of the Supreme Court on this subject and the case of Schumacher v. Lawrence, supra, is apparently the last case by any Circuit Court of Appeals on the subject.

In the cases cited it is held that the federal statute is controlling. However, in Miller et al. v. Oklahoma State Bank of Altus et al., 53 Okl. 616, 157 P. 767, the Supreme Court of Oklahoma reached the same conclusion and held: "Where the usurious interest has been paid on a note for extensions after maturity, in a suit to recover on the note against the maker who paid such interest, he cannot, over objection of plaintiff, set off the note sued upon by an amount equal to double the interest so paid by him, his remedy to recover such penalty when such objection is made is by a separate and independent action against the party to whom the usurious interest was paid."

The court, therefore, is of the opinion that the contractor's claim for usury cannot be asserted in this action. However, in this action, the court can determine the amount due the bank on the notes executed by the contractor.

The bank in its answer and cross-petition alleges that there is due on one note by the contractor the sum of $4,421.37 and on the second note, $755.79, or a total of $5,177.16.

The court finds that the contractor, having paid to the bank the sum of $5,000, as hereinbefore stated in amounts of $1,000, $1,000, $2,500, and $500, respectively, is entitled to credit for that amount, together with interest from the dates said sums were paid, which would give a credit in favor of the contractor, and that the contractor is not indebted to the bank in any amount and the bank, therefore, would have no claim against any fund held by the Highway Commission.

The contractor contends that under the new rules of federal procedure, it would be entitled to assert its claim for usury as a setoff or counterclaim in this action.

This would be asserting a substantive right. The rules are rules of procedure, and rule 82, 28 U.S.C.A. following section 723c, provides: "These rules shall not be construed to extend or limit the jurisdiction of the district courts of the United States or the venue of actions therein," and the courts have held consistently since the adoption of the new rules that it was not the intention of the new rules to affect the substantive rights of individuals which are fixed by federal statute.

This suit was filed on November 24, 1937, and the new rules did not go into effect until November, 1938, and since the claim for usury would affect a substantive right, the court holds that the new rules are not applicable to this case.

The application by the contractor to the plaintiff for a bond included the following:

"* * * to assign and convey and does hereby assign and convey to the Company as collateral to secure the obligations herein and any other indebtedness or liabilities of the undersigned to the Company, whether heretofore or hereafter incurred, all the right, title and interest of the undersigned. in and to: (a) said contract and any change, addition, substitution or new contract (including all retained percentages, deferred payments, earned moneys and all moneys and properties that may be due or become due under said contract, change, addition, substitution or new contract), and every sub-contract let or that may be let in connection therewith * * *."

As stated above, the contractor completed the work but failed to pay numerous claims for labor and material and other outstanding obligations not covered by the bond. The surety company, the plaintiff herein, assumed the payment for labor and material and paid out on said contract the sum of $10,943.43, and all of those whose claims were paid by the plaintiff assigned all of their right, title and interest in and to said claims to the surety company. Other claims set up in addition to those of the bank are as follows: Mat X. Beard in the amount of $2,187.31 for rent of equipment, which claim was reduced to judgment and the judgment has been assigned to one L. B. Jackson; Mike Robertson in the amount of $1,966.36 for rental of mules, horses and equipment; Southwestern Bell Telephone Company in the amount of $86.-40 for telephone service; Harry Abels & Son for $179.97; New State Hardware Company for $14.17; Stroman Motor Supply Company for $7.51; W. D. Conway for $160.50; Sies Machine Company for $58.-35. None of these claims above enumerated were for labor and material used in the construction work, but were for merchandise purchased by the contractor and for services rendered to the contractor, at the time he was engaged in completing this road contract.

It is the contention of these various creditors that their claims are superior to that of the bonding company.

In Standard Accident Insurance Company of Detroit v. Federal National Bank of Shawnee, 112 F.2d 692, 695, the United States Circuit Court of Appeals, Tenth Circuit, on June 12, 1940, handed down an opinion which covers the exact question that is involved in this case. In that case the amount retained by the Highway Commission consisted of the first estimate only. In the case at bar, $104.85 is of the first estimate and the remainder of the sum of $5,538, held by the Highway Commission, consists of the accumulation of the ten per cent. retained percentages. The contract and the bond in the Standard Accident case were in substance identical with the contract and the bond involved in this case. In that case the court said:

"While this right of subrogation accrued when Standard fully performed the construction contract, it related back to the date it entered into the contract of suretyship. Hence, it was prior in time and right to the rights of the Bank under its assignment, and it could not be cut off by an intermediate assignment of Joyce to the Bank.

"The equities of Standard are superior to the Bank's not only because Standard's right to subrogation is prior in time, but also because it acted under compulsion of its contractual obligations and the Bank acted voluntarily in advancing the funds, and notice of the suretyship contract was imputed to the Bank. It is charged with knowledge that public contractors are required to give bond conditioned for the performance of their contracts by § 10095, O. S. 1931, 69 Okl.St.Ann. § 48.

"This right to subrogation is not dependent upon the contractual provisions found in the application for the bond. It arises independently of contract by operation of law under familiar principles of equity."

This is not a new question. The two leading cases by the Supreme Court of the United States are Prairie State Bank v. United States, 164 U.S. 227, 17 S.Ct. 142, 41 L.Ed. 412, and Henningsen v. United States Fidelity & Guaranty Co., 208 U.S. 404, 28 S.Ct. 389, 52 L.Ed. 547. In the Prairie State Bank case the court said [164 U.S. 227, 17 S.Ct. 144, 41 L.Ed. 412]: "That Hitchcock, as surety on the original contract, was entitled to assert the equitable doctrine of subrogation, is elementary. That doctrine is derived from the civil law, and its requirements are, as stated in [Ætna Life] Insurance Company v. Middleport, 124 U.S. 534, 8 S.Ct. 625 [31 L.Ed. 537], '(1) that the person seeking its benefits must have paid a debt due to a third party, before he can be substituted to that party's rights; and (2) that in doing this he must not act as a mere volunteer, but on compulsion, to save himself from loss by reason of a superior lien or claim on the part

of the person to whom he pays the debt, as in cases of sureties, prior mortgagees, etc. The right is never accorded in equity to one who is a mere volunteer in paying a debt of one person to another.' "

In Henningsen v. United States Fidelity & Guaranty Co., supra, the court said [208 U.S. 404, 28 S.Ct. 391, 52 L.Ed. 547]:

"The guaranty company was surety on that contract. Its stipulation was not merely that the contractor should construct the buildings, but that he should pay promptly and in full all persons supplying labor and material in the prosecution of the work contracted for. He did not make this payment, and the guaranty company, as surety, was compelled to and did make the payment. Is its equity superior to that of one who simply loaned money to the contractor, to be by him used as he saw fit, either in the performance of his building contract or in any other way? We think it is. It paid the laborers and materialmen, and thus released the contractor from his obligations to them, and to the same extent released the government from all equitable obligations to see that the laborers and supply men were paid. It did this not as a volunteer, but by reason of contract obligations entered into before the commencement of the work.

\* \* \*

"It seems unnecessary to again review the authorities. It is sufficient to say that we agree with the views of the circuit court of appeals [9 Cir., 143 F. 810], expressed in its opinion, in the present case:

" 'Whatever equity, if any, the bank had to the fund in question, arose solely by reason of the loans it made to Henningsen. Henningsen's surety was, upon elementary principles, entitled to assert the equitable doctrine of subrogation, but it is equally clear that the bank was not, for it was a mere volunteer, and under no legal obligation to loan its money." (Citing Prairie State Bank v. United States, supra, and other cases.)

Riverview State Bank v. Wentz et al., 34 F.2d 419, a case from Oklahoma decided by the Circuit Court of Appeals, Eighth Circuit, sustains the contention of the surety company, citing a long list of authorities including the Prairie State Bank and Henningsen cases.

In United States Fidelity & Guaranty Co. v. Sweeney et al., 80 F.2d 235, the Eighth Circuit Court of Appeals held, quoting from the headnotes, paragraphs 3 and 4:

"Laborers and materialmen have equitable right to payment in preference to general creditors from funds due highway contractor or other contractor on public improvement, and statutory requirement of bond is not inconsistent with such equitable rights."

"Highway contractor's surety paying claims for labor and material pursuant to bonds held subrogated to equities of laborers and materialmen, and its rights related back to time of becoming surety."

Therefore, in the case at bar, there being $5,538 in the possession of the Highway Commission and the surety company having paid out $10,943.43 for labor and material, the surety company would stand in the position of the laborers and materialmen by subrogation and would have the same right to the funds in the possession of the Highway Commission up to the amount which it paid out for labor and material, as the laborers and materialmen would have had, originally.

The court finds that the plaintiff's lien is superior and prior to the liens asserted by the bank and by all the general creditors, and is therefore entitled to the moneys in the possession of the Highway Commission, not to exceed the sum of $10,943.43, together with six per centum interest thereon from the date of its payment. Since the plaintiff is held to have a prior lien to all other creditors and since the sum in the possession of the Highway Commission is even inadequate to pay the plaintiff the amount it has paid out for labor and material, it becomes unnecessary to determine the order of priority of the general creditors.

Findings of fact, conclusions of law, and a form of judgment may be submitted consistent with this opinion. An exception is allowed the contractor and each of the claimants.