THE PEOPLE'S BUILDING, LOAN AND SAVINGS ASSOCIATION v. JOHN W. KIDDER AND JUDITH R. KIDDER.

No. 357. (58 Pac. 798.)

USURY—*Building and Loan Association Contract—Mortgage.*
Where a building and loan association, by correspondence, enters into a contract with one for the sale of some shares of its capital stock and for a loan of money, the purchase-price of the stock and principal and interest on the loan to be paid at the association's office in New York, the loan to be secured by a mortgage upon real estate in Kansas and by an assignment of the association's stock, and it is contracted that the stock at maturity of the loan shall be applied toward the payment of the mortgage debt then due, the borrower to pay "contribution of interest, premium, loan fund, expense fund, bonus, interest accrued, fines

25—9 KAN. APP.

imposed," which amounts altogether are in excess of the legal rate of interest, such contract is one contract, is a Kansas contract, and is usurious.

Error from Republic district court; F. W. STURGES, judge.    Opinion filed October 9, 1899.    Affirmed.

*Dillon & Hogin*, for plaintiff in error.
*Jay F. Close*, for defendants in error.

The opinion of the court was delivered by

McELROY, J. : This action was instituted by the plaintiff in error as plaintiff below against John W. Kidder and wife for the recovery of the amount due upon a bond or note, and for the foreclosure of a real-estate mortgage.   A trial was had before the court without a jury; the court made special findings of fact and conclusions of law, and rendered judgment for the amount due, after applying all payments to the satisfaction of the amount of the principal and interest due upon the amount of money actually received from the association.   The court, in effect, held that the purchase of the association's stock and the loan of money were one contract, constituting the relation of lender and borrower between the parties, and applied all payments accordingly.   The plaintiff excepted to the findings and judgment of the court and presents the case to this court for review.

The principal facts, as shown by the record and findings of the court, are as follows : The People's Building, Loan and Savings Association is a corporation organized and doing business under the laws of New York.   The defendants Kidder are residents of the state of Kansas.   On the 16th day of May, 1891, John W. Kidder made application, in writing, to purchase of the plaintiff twenty shares of its capital stock,

of the par value of $100 per share, by paying the sum of thirteen dollars per month until the stock should be fully paid.   At the same time he applied to the association for a loan of $1600.   The defendant purchased the stock with a view of procuring the loan. The plaintiff sold the defendant shares of stock with a view of making the loan upon the security offered, but at that time there was no contract necessity that he should accept or that plaintiff should make the loan.

The application for the purchase of stock and that for the loan were made at the same time; the loan was not actually made, however, until some months later.   September 9, 1891, Kidder executed and delivered to the association his bond or note for the amount, secured by mortgage upon real estate, described as lots 277 and 278, in the original town of Scandia, Republic county, Kansas, and as additional security he assigned his shares of stock in writing, as follows:

"In consideration of the sum of $1600, loaned to me by the People's Building, Loan and Savings Association, of Geneva, N. Y., on a certain indenture bearing date the 9th day of September, 1891, I hereby assign, transfer and set over unto E. A. Walton, treasurer of said association, all my right, title and interest in my certificate of shares No. 01374, as collateral security to said loan, it being understood and agreed that the amount of the within-named shares at maturity shall be applied toward the payment of the mortgage debt then due."

On November 10, 1891, the plaintiff forwarded to the defendant the sum of $1411.34, being the sum of $1600, less $160 retained as a bonus for making the loan, $26.66 interest accrued, and the sum of $2 as a fine imposed for delinquency in making payment as

provided by the by-laws. The defendant agreed to pay $13.33 per month — five per cent. interest, and five per cent. premium — on the sum of $1600. These contracts were entered into by correspondence; they were drawn by plaintiff in New York and sent to defendants at Scandia, who executed and returned them to the plaintiff. All payments were to be made to the secretary of the association at Geneva, N. Y. The court found as a conclusion of law that the contracts amounted to an evasion of the usury law, were usurious, and could not be enforced; that the ultimate object of the contracts, taken together, was the loaning of money and the receiving therefor a rate of interest not authorized by law; and that each payment made by the defendant should be applied to the payment of the loan, with legal interest.

The plaintiff and defendants concede that the court made some error in computation of the amount due, by which plaintiff was not given so large a judgment as it was entitled to under the findings of the court, but as both parties agree that this matter will be corrected by mutual consent, we have given it no attention whatever.

The questions presented by the assignment of error and the record are whether the court erred (1) in holding that the contracts are usurious; (2) in holding that the contracts should be construed by the laws of the state of Kansas with reference to usury; and (3) in applying all of the payments made upon the mortgage indebtedness with interest thereon.

The contract for the purchase of stock and for the loan of money was made by correspondence between Kidder, in the state of Kansas, and the association, in New York; the place of performance as fixed was at the office of the association in the latter state. This

contract, so far as its language could control, was entered into with reference to the laws of the state of New York, and was to be there performed; that is, the purchase-price of the stock and the principal and interest upon the loan were to be paid at the association's office.  However, the mortgage could only be enforced in the state of Kansas.  A contract usually is entered into with reference to the laws of the state or country where it is made, or to be performed, but where a contract must be enforced in a particular place, the laws of that state may apply to such provisions of the contract as are in conflict with the laws thereof.  In the foreclosure of a real-estate mortgage, the usury law of the state in which the land is situated will govern, although payment of the loan in another state is provided for by the terms of the contract.  The contract amounts to an evasion of the usury laws, and it cannot be enforced.  Section 2 of chapter 116, General Statutes of 1897 (Gen. Stat. 1899, § 3483), limits the power of a creditor to contract for a higher rate of interest than ten per cent. per annum, and section 3 (Gen. Stat. 1899, § 3484) provides:

"All payments of money or property made by way of usurious interest or of inducement to contract for more than ten per cent. per annum, whether made in advance or not, shall be deemed and taken to be payments made on account of the principal and ten per cent. per annum, and the courts shall render judgment for no greater sum than the balance found due after deducting the payments of money or property made as aforesaid.  .  .  ."

This is an express inhibition on the power of the court to enforce a contract for any rate of interest in excess of that prescribed by our statute.  The bond was for the payment of $1600; the defendant received

$1411.34, and was required to pay as interest $13.33 per month, called by the contract "contribution of interest" and "contribution of premium," together with $13 per month upon the purchase-price of the shares of capital stock, to be applied to "loan fund" and "expense fund." The $160 deducted was called a bonus, the $26.66 accrued interest, and the $2 a fine imposed; we are unable to distinguish the difference between "bonus," "contribution of interest," "contribution of premium," "fines," "penalty," "loan fund," and "expense fund," as used, and simply interest. The transaction, taken as a whole, is very much confused; in fact, it appears to have been planned for the purpose of creating confusion, but as a whole it amounts simply to the loaning of money by the association, together with the collection of a consideration for the use of the same, which is usually called interest.

Taking this view of the matter, many of the elements of uncertainty and confusion are eliminated. The association had nothing in view except the loaning of money and the collection of interest, under the various names of bonus, penalty, contribution of interest, contribution of premium, contribution to loan fund, and contribution to expense fund, nor had Kidder anything in view except to borrow money and repay the same with interest. We do not doubt that this contract is in harmony with the laws of New York, nor have we any objection to such association enforcing such contract in that state. It seems, however, that while the association desires to claim all the benefits of a New York contract as an abstract proposition, it desires the courts of this state to enforce the same as a Kansas contract, for the purpose of enabling it to secure the foreclosure of its lien upon Kansas soil for

the payment of a usurious contract. This contract, made as it was by correspondence, with a view of being enforced in this state, is a Kansas contract. Both contracts were entered into at the same time; Kidder made application for the purchase of stock and for a loan at the same time, as a part of the same transaction. It is apparent that neither of the parties to this transaction would have entered into one of these contracts if the other had not been contemplated. To view the purchase of stock and the loan as two transactions, resulting in two contracts, is to obscure the real transaction by a shadow. There appears to have been an effort made by the use of language with contract forms to give to the transaction the form of separate contracts, but the contract provides that ''the amount of the within-named shares, at maturity, shall be applied toward the payment of the mortgage debt then due.'' It was therefore contemplated that the loan should be paid, at maturity, from the stock assessments, and expressly agreed that such assessments are to be applied, sooner or later, to the payment of the amount due on the loan. This entire transaction on the part of the association seems to be a scheme to avoid the usury statute, and all payments made should be considered as payments on account of the loan, together with legal interest. It is wholly impossible to harmonize the decisions of the various states upon such contracts as the one now before the court. The legislature has provided for the exemption of such contracts from the usury law in behalf of associations organized under the laws of this state. (Gen. Stat. 1897, ch. 66, art. 5; Gen. Stat. 1899, §§ 1351–1389.)

There was but one contract, that for the loan of money with interest; there was but one relation be-

tween the parties, that of debtor and creditor. The contract must be construed by the laws of this state, and is usurious. All the payments must be applied to the payment of the mortgage indebtedness with interest.

The judgment must be affirmed.

MAHAN, P. J., concurring.

WELLS, J. (dissenting) : I do not think the law is correctly stated in the foregoing opinion. It does not seem to me that the statement "in the foreclosure of a real-estate mortgage, the usury law of the state in which the land is situated will govern," is sustained either by the weight of authority or by reason. In *Kurtz v. Sponable*, 6 Kan. 397, the supreme court held : "Under our law the mortgage is but appurtenant to the debt." In the American and English Encyclopedia of Law, volume 27, page 974, it says : "The fact that a contract made and to be performed in one state is secured by a mortgage upon land in another does not affect the rule that the *lex loci contractus* governs ; the security is a mere incident."

Nor do I think all the payments enumerated should be held as payments upon the mortgage indebtedness. Any payment made by a member of the corporation under the laws thereof, having exclusive reference to and intended for the purpose of securing or enhancing the value of the capital stock, is in no sense a payment upon the debt, except as it tends to create a fund from which the debt may be ultimately paid.