AETNA BUILDING & LOAN ASS'N v. HARRIS et al.

No. 6791—Opinion Filed Aug. 8, 1917.

On Rehearing, Feb. 12, 1918.

(170 Pac. 700.)

(Syllabus.)

1. **Building and Loan Associations—Bid for Loans—Premiums.**

Where a building and loan association loaned money without requiring bids for the preference in obtaining the loan as required by section 1196, Wilson's Rev. & Ann. St. 1903, it has no right to charge premiums, and premiums and dues paid under a loan agreement made without bids will be applied to discharge the loan.

2. **Usury—Loan—Interest and Premium.**

H. and wife borrowed $1,000 from a building and loan association, and assigned as security therefor two shares of stock held by them, and executed a mortgage upon certain real estate. They paid on the loan $5 per month interest, and $5 per month premiums, and in addition to said sums paid $5 per month dues on the stock assigned as security for the loan. Upon maturity of the stock same was to be canceled, and the debt extinguished, and the real estate mortgage was to be satisfied. Held, that the loan was usurious.

Error from District Court, Washita County; James R. Tolbert, Judge.

Action by the Aetna Building & Loan Association against Lillie A. Harris and others. Judgment for plaintiff, and it brings error. Affirmed.

Ferry, Doran & Dean and Cottingham & Hayes, for plaintiff in error.

A. M. Beets, for defendants in error.

HARDY, J. The Aetna Building & Loan Association commenced this action in the district court of Washita county to recover upon a certain note in the sum of $1,000 executed Alfred A. and Lillie A Harris, and to foreclose a mortgage upon certain real estate given to secure the payment thereof. The answer alleged that the relation between plaintiff and the makers of said note and mortgage was that of lender and borrower, and not that of shareholder and association, that said contract was usurious, and that it was made and entered into with the intent upon the part of plaintiff to evade the usury laws of the territory of Oklahoma and of the state of Kansas, and admitted an indebtedness of $92.69, which amount defendants offered to deposit in court. Reply was filed and trial had to the court, who found that the contract sued upon was usurious, and that by reason thereof plaintiff was entitled to recover no interest upon the amount of its loan, and rendered judgment in favor of plaintiff for $78.69, and plaintiff appeals.

Harris and wife, who were the owners of two shares of stock in the plaintiff corporation, borrowed $1,000 from plaintiff, and assigned the shares of stock held by them, and executed the mortgage in question as security for the payment of said note. The rate

of interest prescribed in the note was 6 per cent., and they made a monthly payment of $5 interest, and in addition thereto paid the further sum of $5, which was denominated premium, and $5 as dues upon said stock. Payments were made in this manner to an amount aggregating $315 interest, $315 premiums, and $315 dues. Defendants contend that the so-called premium was not fixed by competitive bidding, but was arbitrarily determined and charged by the association, and therefore the contract was not governed by the law regulating building and loan associations, but was one of lender and borrower, and that plaintiff is not entitled to the benefit of such laws. The contract was entered into in 1906, and it is conceded by counsel for plaintiff in error that the rights of the parties must be determined by the laws of Oklahoma Territory, which were in force at that time. Under these laws it was required as a condition precedent to the charging and collecting of a premium that it should be bid by the stockholder making application for the loan. Aetna Bldg. & Loan Ass'n v. Rouch et al., 32 Okla. 735, 124 Pac. 24; Midland Savings & Loan Co. v. Henderson, 47 Okla. 693, 150 Pac. 868; Midland Savings & Loan Co. v. Deaton, 57 Okla. 622, 157 Pac. 285.

Section 3 of article 5 of the by-laws of the plaintiff association require that:

"For each $100 loaned on real estate, the borrower shall pay an annual interest at the rate of the maximum legal rate of interest now permitted or hereafter permitted by the laws of the state or territory where such loans are made, in monthly payments."

The legal rate of interest in Oklahoma Territory at the date of this contract was 12 per cent., while the legal rate in Kansas was 10 per cent. The agent of plaintiff testified that he took applications for loans and forwarded them to the plaintiff association upon terms dictated by them, and that Harris bid no premium for the loan when transmitting his application. There was an indorsement upon the application that 50 cents per month per $100 was bid, but it is not shown when this indorsement was placed thereon. Under the section of the by-laws above referred to, the officers of the association were without authority to loan money at less than 12 per cent. in Oklahoma Territory, and thus the premium to be paid was arbitrarily fixed. Prior to the enactment of chapter 200, Session Laws 1913, § 4, p. 446, an attempt to establish and enforce a provision as to a fixed premium determined by an arbitrary rule instead of by competition could not be enforced against the borrower. Aetna Bldg. & Loan Ass'n v. Rouch, supra; Mutual

Home & Sav. Ass'n v. Worz, 67 Kan. 506, 73 Pac. 116; Washington Inv. Co. v. Stanley, 38 Or. 319, 63 Pac. 489, 58 L. R. A. 816, 84 Am. St. Rep. 793; McCauley v. Building & Savings Ass'n, 97 Tenn. 421, 37 S. W. 212, 35 L. R. A. 244, 56 Am. St. Rep. 813; Gray v. Baltimore Bldg. & Loan Ass'n, 48 W. Va. 164, 37 S. E. 533, 54 L. R. A. 219.

The facts stated show that the relation of lender and borrower existed between the parties, and this being true, plaintiff was not entitled to collect any premium or dues but all such sums paid by the borrower must be credited upon the amount of the loan. Aetna Bldg. & Loan Ass'n v. Rouch et al., supra; Lindsay v. Chickasha Bldg. & Loan Ass'n, 39 Okla. 12, 130 Pac. 570; Midland Savings & Loan Co. v. Deaton, supra.

The by-laws further provide that the matured stock of all borrowing members shall be canceled and mortgages released at their expense, providing the payments of interest and premiums have been made according to agreement. The note provides that the makers shall pay 6 per cent. interest per annum in monthly installments of $5, also a monthly premium of $5 each, and every month until sufficient assets accumulate to pay each shareholder $5 per share, and a similar provision is contained in the mortgage. By section 12 of the by-laws, the shares of stock mature whenever the installments paid thereon and earnings credited thereto amount to the par value thereof. Under this arrangement, it is clear that the issuance of stock which was reassigned to the company as security for the loan and was to be canceled at the maturity thereof and the mortgage satisfied created merely the relation of lender and borrower, and the monthly installments denominated dues were in fact paid upon the principal debt. And this is made the more plain when it is seen that at the maturity thereof the shares of stock were to be canceled and the debt extinguished. Fidelity Ass'n v. Shea, 6 Idaho, 405, 55 Pac. 1022; People's Bldg. Loan & Sav. Ass'n v. Kidder, 9 Kan. App. 385, 58 Pac. 798; Western Loan & Savings Co. v. Houston, 38 Or. 377, 65 Pac. 611; Johnson v. Washington Nat. Bldg. & Loan & Inv. Ass'n, 44 Or. 603, 77 Pac. 872; Hale v. Stenger, 22 Wash. 516, 61 Pac. 156; Falls v. U. S. Savings Loan & Bldg. Co., 97 Ala. 417, 13 South. 25, 24 L. R. A. 174, 38 Am. St. Rep. 194; Mills v. Association, 75 N. C. 292.

It is contended that section 1198, Wilson's Rev. & Ann. Stat. 1903, prevents the application of the usury laws to the contract in question, but this section only gives an association the benefit of the laws regulating building and loan associations when a contract is

entered into in accordance with such laws, and has no application where, as here, the acts of the parties simply result in a loan of money. If Harris was entitled, as we hold he was, to have the sums paid by him each month as dues applied on the face of the debt, the contract was clearly usurious because the principal amount due would be decreased by the application of each monthly payment.

Conceding that the $5 denominated premiums should and may properly be called interest, and that the interest exacted did not exceed 12 per cent. upon the original amount of the loan, yet this rate of interest was continued throughout the term for which the loan was to run, notwithstanding the fact that each monthly payment of $5 dues decreased the principal debt to that extent. Sixty-three payments of $5 each as dues were made, thus reducing the amount of the loan to $685. Nevertheless, plaintiff still exacted and received $10 per month interest, which upon the sum of $685 would amount to 17½ per cent. or more. And the per cent. of interest thus collected would increase in proportion to the decrease of the principal until the debt was finally liquidated. And if the debt had been reduced to $100 or to $50 or less, the plaintiff, under its contract, would still have demanded the $10 per month interest. It seems there can be no question that this was a device to evade the usury law. This may be demonstrated in another way: Calculating interest upon the face of the loan at 12 per cent. from its date to the date of last payment, the amount of interest thereon would be $430, while in fact the amount charged and collected was $630. It may be demonstrated in still another way. If credit be given upon the principal debt for each monthly payment of $5 denominated as dues, the average amount of money owed by Harris between the date of the loan and the date of last payment would be $842.50. On this amount interest and premiums were collected at the rate of $10 per month straight. This equaled a rate of interest amounting to 14½ per cent. upon the average amount of money owed between the two dates. These calculations demonstrate beyond question that unless the relation between the parties was that of association and shareholders, no matter how the payments are applied or upon what basis the interest is figured, the amount actually charged and collected by plaintiff was in excess of 12 per cent., which was the maximum amount allowed by the law of Oklahoma Territory, and these calculations do not take into consideration fines which were collected amounting to $45, and which,

under the authorities cited, should be credited upon the loan along with the premiums and dues. These facts were sufficient to support the finding that the loan was usurious. Being tainted with the usury, the note and mortgage sued upon lost their interest-bearing qualities (section 849, Wilson's Rev. & Ann. Stats.), and plaintiff was not entitled to collect interest thereon, and all payments made by Harris were properly applied by the court upon the amount due upon the principal. It does not appear that any other reasonable conclusion could have been reached upon the evidence. The by-laws of the association prohibit the fixing of premiums by competitive bidding as the law required at that time, the terms of the loan were dictated by the association, and the general plan of doing business shows that the whole scheme was adroitly prepared and carried on for the purpose of securing a greater rate of interest for the loan of money than that allowed by law. Two classes of shareholders were provided for, a nonborrowing class, and the other borrowing its funds at excessive rates of interest, and upon the whole the methods pursued appeared to be a perversion of the original plan and purpose of building and loan associations.

It is admitted that $990 was paid on the contract, and that plaintiff had paid insurance on the improvements amounting to $41.-50, which plaintiff was entitled to recover with $1.66 interest thereon, and had also paid taxes in the sum of $21.95, the interest upon which amounted to $1.58, for which sums plaintiff was entitled to judgment.

The judgment is affirmed.

All the Justices concur, except SHARP, C. J., and TURNER, J., absent.

### On Rehearing.

HARDY, J. On petition for rehearing plaintiff in error urges that by section 5, chapter 9, Sess. Laws 1895, same being section 1315, Rev. Laws 1910, every building and loan association doing business in Oklahoma Territory was entitled to loan its funds in the manner which should be specified in its by-laws, and that by reason of said section it was authorized to arbitrarily fix the amount of premiums charged, so long as the combined rate of interest agreed upon and the premium thus fixed did not exceed the legal rate of interest. This section was in force at the time the contract involved in Aetna Building & Loan Association v. Rouch et al., 32 Okla. 735, 124 Pac. 24, was entered into, and it was held in that case that the association was not authorized to arbitrarily fix the premiums to be paid by a borrower for

moneys loaned, and because the premium had been so fixed that same must be credited on the amount of the loan.

It is also urged that section 7, art. 5, c. 10, Sess. Laws 1905, being section 1326, Rev. Laws 1910, authorized plaintiff in error to arbitrarily fix the amount of premium charged. We cannot agree with this contention. The primary purpose of enacting said chapter was to regulate building and loan associations, and prescribe the requirements under which they might be permitted to transact business in Oklahoma Territory. Said chapter also provided that when any resident of Oklahoma Territory purchased stock in any foreign building and loan association with the object and purpose of obtaining a loan of money at the time of subscribing for such stock executed an application therefor he should, upon complying with the by-laws, rules, and regulation of such association, be entitled thereto, and compelling such association to execute such loan within 60 days from the date of application, or repay to such proposed borrowing stockholder all moneys paid by him for stock in such association. Prior to the passage of this legislation many prospective borrowers who subscribed for stock with the intention of procuring a loan failed in securing such loan, and in many instances forfeited the amount paid in, and it was the purpose of this legislation to prevent occurrences of this kind.

The word "premiums," as originally used in building and loan statutes and contracts, contemplated a payment for the use of money in excess of the rate of interest agreed upon, and did not necessarily mean a payment for the use of money in excess of the highest legal rate of interest that might be charged. The rate of interest was fixed by agreement of the parties, and premiums were determined by the amount bid; the person offering the highest rate of premium being entitled to preference in obtaining a loan. When competitive bidding was abolished, and the amount charged was arbitrarily fixed by the by-laws, as was the case here, at a rate not less than the highest legal rate of interest allowed by law, then there was in fact no such thing as a premium, and the use of such word was misleading. The rate of interest was fixed in the contract, and the law required premiums to be fixed by competitive bidding, which it is admitted was not done, and we still adhere to the view that all payments in excess of the rate of interest agreed upon must be credited upon the loan.

The petition for rehearing is overruled.

All the Justices concur.