### BEAN et al. v. RUMRILL.

No. 8229—Opinion Filed Feb. 5, 1918.

On Motion for Rehearing, April 30, 1918.

(172 Pac. 452.)

**1. Usury—Usurious Transaction—Contract.**

Where a money lender engages an agent to make loans of money, and such agent procures a contract with the borrower by which the borrower agrees to pay 10 per cent. per annum interest from the time the money is lent, and in addition thereto, as a part of the same transaction, the agent requires the borrower to contract for or to pay an additional sum for the use of the money under the guise of a so-called commission, the entire contract is construed together and is usurious.

**2. Principal and Agent—Act of Agent—Notice to Principal.**

The lender of money is charged with notice of the acts of his agent within the scope of the agent's authority.

**3. Limitation of Actions—Running of Statute—Nonresident.**

A statute of limitation does not begin to run against a cause until the case is brought under its operation, and does not run in favor of a nonresident of the state until summons can be served within the state and a valid personal judgment had which can be enforced in a mode provided by law.

**4. Limitation of Actions—Usury—Recovery of Twice the Usurious Interest—Constitutional and Statutory Provisions.**

The constitutional provision and subsequent legislative enactment of this state authorizing the recovery of twice the usurious interest paid on a usurious contract in "an action in the nature of an action for debt" is an enlargement of the common-law remedy authorizing the recovery in an action for debt of interest paid in excess of the lawful rate, and the evident intention of the lawmakers was that the limitation prescribed within which the action must be brought was subject to the same tolling provisions

of the statute that apply to other actions for debt.

## 5. Usury—Right of Action.

The fact alone that usurious interest was paid by sale of the borrower's property pursuant to a judgment of mortgage foreclosure does not prevent the borrower from afterwards maintaining an action to recover twice the usurious interest so paid.

## 6. Limitation of Actions—Usury.

An action to recover twice the amount of the interest paid on a usurious contract may be brought within two years from the payment and discharge of such contract or from the last payment of interest thereon.

## 7. Limitation of Actions—Statutory Action —Tolling of Statute.

The fact that a cause of action is created by statute and did not exist at common law does not necessarily prevent the limitation as to time within which same may be brought from being subject to the tolling provisions of the statute.

## 8. Same—Tolling Statute—Construction.

The provisions of section 4660, Rev. Laws 1910, tolling the statute of limitation on account of absence from the state applies to an action for the recovery of twice the amount of interest paid on a usurious contract.

## 9. Judgment—Res Judicata—Usury.

A judgment for the full amount of the principal and interest contracted for in a usurious transaction is not res adjudicata as to an action brought afterwards for the recovery of twice the usurious interest paid in satisfaction of such judgment.

On Motion for Rehearing.

## 10 Appeal and Error—Verification of Answer—Assumption.

In view of Supreme Court rule 26 (47 Okla. x, 165 Pac. ix), requiring defendant, if the abstract of plaintiff is incomplete to set forth a counter abstract, the court may assume that the answer was not verified where neither of the briefs filed showed that it was verified.

(Syllabus by Stewart, C.)

Error from District Court, Oklahoma County; Geo. W. Clark, Judge.

Action by A. W. Bean and Mamie Bean against George II. Rumrill. Judgment for defendant, and plaintiffs bring error.| Reversed and remanded, with directions to render judgment for plaintiffs.

W. A. Smith, for plaintiffs in error.

George A. Fitzsimmons, for defendant in error.

Opinion by STEWART, C. It is alleged in plaintiffs' petition that defendant is and was a non-resident of the state, and absent continuously from the state at all times men-

tioned in the petition; that John A. Burt was the agent of the defendant, the agency being set forth in the following words:

"That at the times hereinafter mentioned, and for a long time prior thereto, John A. Burt was the general agent of defendant in the county and state of Oklahoma, with authority from said defendant to negotiate loans of money of defendant and collect the sums due thereon for the use and benefit of said defendant, and that said John A. Burt acted in such capacity and with the authority aforesaid in the matters and things hereinafter set forth."

It is alleged that, through such agency, the defendant on May 22, 1909, contracted to lend and did lend to the plaintiffs for a period of three years the sum of $2,500, for which the plaintiffs were required to make note and mortgage to the defendant for the sum of $2,650, drawing interest at 10 per cent. per annum from date, and also note and mortgage to the said John A. Burt for $150, with 10 per cent. per annum interest from date, and that the plaintiffs were required to pay the defendant and did pay said sum of $2,500, and in addition thereto the sum of $1,180 usurious interest in pursuance of such usurious contract whereby the defendant became liable to the plaintiffs in the sum of $2,361.42 being double the amount of usurious interest paid, for which sum the plaintiffs pray judgment, with interest thereon at the rate of 6 per cent. per annum.

The defendant answered, denying the usurious contract and the payment of any usurious interest, denying that John A. Burt in such transaction was the agent of the defendant, and alleging that defendant furnished to plaintiffs the sum of $2,650, contracting for only 10 per cent. interest thereon, and that any sum received or contracted for by John A. Burt was for services rendered by John A. Burt for the plaintiffs and without defendant's knowledge; that plaintiffs' claim was barred by the statutes of limitation, in that the action was not brought within two years after the maturity of the alleged usurious contract. Defendant also sets forth in his answer copies of the original notes and mortgages involved and copies of the pleadings and proceedings in a foreclosure suit brought by defendant against the plaintiffs on the contract in which John A. Burt is intervener, and wherein judgment was rendered for defendant as plaintiff in such proceedings and John A. Burt as intervener for the full amount of principal and interest due as per face of such notes and mortgages, less amounts paid thereon by plaintiffs. The defendant's pleadings show judgment of foreclosure, sale of

mortgaged property, and payment of such judgment. The defendant avers that such judgment was and is res adjudicata as to paintiffs' alleged cause of action.

Plaintiffs filed reply denying the allegations in the answer and setting up matters in explanation of such allegations.

The cause came on for trial before a jury, and the plaintiffs introduced evidence fully supporting all of the allegations contained in the petition, including the allegations as to Burt's agency for the defendant, which was not necessary, for the reason that the defendant did not verify his answer nor in any other manner deny such agency under oath. Among other things, the evidence showed, without dispute, that the defendant was a resident of the state of Wisconsin, and carried on through Burt and other agents an extensive loan business in this state; that shortly before making the loan to the plaintiffs he visited Oklahoma City to see Burt about his loans and collections: that before the visit the plaintiffs, who are negroes, had been negotiating with Burt for a loan on valuable Oklahoma City real estate for the purpose of finishing a building thereon which was in the process of construction; that Burt had told them he was not loaning his own money, but was making loans for Mr. Rumrill; that, when Mr. Rumrill came to Oklahoma City, I. E. Bean, acting for the plaintiffs, visited him and inquired about the loan, to which inquiry the defendant replied:

"Mr. Burt is handling my business here in Oklahoma City, and whatever is done between you and Mr. Burt is all right with me. I am not acquainted with you people at all, so you will have to transact your business with Mr. Burt, because I don't know you."

The loan was afterwards made by Burt. He was sworn as a witness, and, though not frank in his testimony, evidently trying to protect the defendant, corroborated the other testimony as to the transactions had afterwards, such testimony showing that the plaintiffs were to receive $2,500, for which they were to make and execute the notes mentioned in the petition and set out in defendant's answer, the loan to run for a period of three years; that Rumrill delivered $2,650 to Burt, out of which Burt retained $150, the note and mortgage for $2,650, with interest at 10 per cent. from date, being delivered to Rumrill, and Burt receiving an additional note and mortgage for $150, drawing 10 per cent. from date; that Burt looked after the mortgages and title for Rumrill, and deposited the money in a bank, keeping it for several months, paying off mechanics' liens and other incumbrances against the property, not permitting the

plaintiff to make checks unless approved by him, finally paying the plaintiffs the balance of the $2,500 after deducting the amounts paid out in removing liens from the property. He testified that he had been making loans for Rumrill; that, when he was acting as agent for Rumrill, he was paid by Rumrill, but, when he acted as agent for the borrower, he was paid by the borrower; that he collected for Rumrill: and that, as to the particular loan in question, Rumrill did not agree to pay him, but he was to get his "commission" out of the other parties.

The evidence shows that the plaintiffs filed answer in the foreclosure suit mentioned, but on October 5, 1912, by written stipulation between the parties filed in the cause, it was agreed that judgment should be rendered on October 7, 1912. the property to be sold after the expiration of six months from the date of the judgment, Rumrill agreeing to bid and pay the full amount of the judgment and costs for the property and sell it back to the negroes on monthly payment plan; that the property was sold, and Burt acted with Rumrill's attorney in managing the sale and making the bids, and the property was permitted to sell on bid made by some nonresident bidder, all the circumstances showing that such bidder was an agent of Rumrill, for barely a sufficient sum to satisfy the judgment, costs, and accrued interest; that Rumrill and Burt received in satisfaction of the judgments rendered the proceeds of such sale, less costs and attorney's fees, the amount which plaintiffs were thus compelled to pay being fully $1,180.71 in excess of the costs, attorney's fees, and the $2,500 furnished them: that Rumrill did not comply with the agreement to resell the property to the plaintiffs in this case, offering the excuse that he was not the purchaser.

The defendant demurred to the sufficiency of plaintiffs' evidence. The court sustained the demurrer, on the theory that the defendant did not receive any of the $300 "commission," discharged the jury, and rendered judgment for the defendant. The plaintiffs duly appeal.

A demurrer to plaintiffs' evidence admits, for the purpose of the demurrer, all the material facts in evidence, including legal presumptions and admissions, either in the pleadings or otherwise, in the most favorable light toward the plaintiff. If the demurrer is wrongfully sustained on appeal, the cause may be remanded for new trial or judgment either rendered or directed as the facts and circumstances presented by the record may warrant. If, under the facts

proved, construed favorably toward the plaintiffs, it appears that there are no such issues of fact involved as would enable the defendant to defeat the recovery by further proof, not inconsistent with admissions made and legal presumptions indulged, the appellate court may render the case or direct a judgment as, in its discretion, is deemed proper. Ordinarily the plaintiff ought not to be compelled to undergo the burden and expense of another trial merely because of an error of the trial court brought about by the acts of the defendant. However, where it is probable that substantial injustice may be done by finally disposing of the case, a new trial may be awarded on such terms as to costs that may be equitable and just. As this case must be reversed, we will bear in mind these principles in disposing of the appeal.

The presumption in this case is that the allegations of plaintiff as to the agency of Burt are true, not being denied under oath as required by statute. If the defendant, under his unverified denial, had proceeded and introduced evidence without objection on the part of the plaintiff that Burt was not such agent of the plaintiff, and the case had been tried without objection on the theory that the question of agency was properly in issue, it might be held that the matter of verifcation of the denial of agency was waived, but such course the defendant did not adopt. However the undisputed testimony of Bean, the admissions of Burt, and all the circumstances in the case established that Burt was the agent of the plaintiff in the way and manner alleged in the petition.

In Langley v. Ford et al., 68 Okla. 83, 171 Pac. 471, Mr. Justice Hardy, speaking for this court, says in the syllabus:

"One who, on behalf of a loan company, takes an application for loans, which applications are required to contain a detailed description of the property and the occupancy thereof, with the applicant's statement as to the condition of his title, which application, accompanied by an abstract showing the condition of the records concerning the title of the applicant to the property offered as security for the loan, is forwarded to the company, where the application and abstract is submitted to its attorney for an opinion as to the title of the applicant, and the necessary papers prepared and sent to the person taking the application to secure the execution thereof by the prospective borrower, is agent of the loan company, and notice of all knowledge acquired by him affecting the subject-matter of the agency, while acting within the scope of his authority, will be imputed to the company."

In the body of the opinion the court says:

"Plaintiff must be deemed to know what his agent knew, and cannot retain the benefits of that agent's acts without accepting the consequences of his knowledge. He cannot be permitted to obtain any greater rights from the acts of his agent than if he did the thing himself, knowing what the agent knew; that is, he cannot ratify the acts of the agent so far as beneficial to him, and repudiate the remainder. If he accepts any benefit flowing from the acts of the agent after he knows and appreciates what his agent has done, or with notice which the law imputes to him, he will not be permitted to say that the agent acted for him in procuring the note. and repudiate the agency when it is sought to impute to him knowledge of facts affecting the note acquired by the agent within the scope of his authority and concerning the subject-matter of the agency."

In addition to the failure to deny the agency under oath, the facts in the case at bar show that Burt was clothed with even greater authority than contemplated by the facts recited by Justice Hardy in the syllabus quoted. Following the precedent cited, we must hold that the defendant was charged with notice of Burt's acts, and further that, having ratified such acts so far as beneficial, he cannot now escape responsibility and consequent liability for the remainder.

The plaintiffs received $2,500 in cash, and were compelled to execute notes running three years in the sum total of $2,800, drawing on their face the highest legal rate of interest. The note of $2,650 to Rumrill also contains the following stipulation:

"The makers hereof agree to pay on the principal sum of this note the sum of $50.00 per month after seven months from the date hereof and credit of such payments to be made at the end of each year from the date of the first payment."

The plaintiffs made several of such monthly payments before the beginning of foreclosure proceedings. This was another ingenious scheme to extort more for the forbearance or use of money than the law contemplates. If the monthly payments had been made at the time agreed upon, it being stipulated that they were payments of principal, the same, as paid, should have been credited on the principal, and consequently would have reduced the sum upon which interest thereafter might rightfully have been collected. The credits for monthly payments were to be made at the "end of each year from the date of the first payment." The payments were to begin after the expiration of seven months, which would leave two years and five months for the contract to run. The first payment for each

year would be credited at the expiration of 12 months, the next payment after 11 months, and so on down to the last payment of each year. In the meantime the entire principal, though paid in part each month, would be drawing interest at the rate of 10 per cent., as expressed in the notes. Summing up the periods of time that would elapse in each of the 2 years before the respective monthly payments would be credited, we find that the defendant would reap each of the 2 years after the first payment, as the result of his cunning, what would be equivalent to interest on $50 for 78 months in addition to the lawful rate on the unpaid balance of principal. For the 2 years the excessive interest so contracted for would amount to the interest on $50 for 156 months. Now, assuming that a proper construction of the stipulation under discussion would result in the monthly payments of principal, during the remaining months being credited at the expiration of the term of the contract, we find that during such 5 months the defendant would be rewarded, under the terms of the contract, with the equivalent of 10 per cent. interest on $50 for 15 months in excess of the legally authorized amount. The sum total would be an amount equaling the interest on $50 for a period of 171 months, or 14 years and 3 months, which sum is $71.25. Thus, on the face of the note made payable to Rumrill, it appears that he contracted with the plaintiffs to pay $71.25 more than the legal rate to which he was entitled. We are aware that interest not to exceed the amount for one year may be required in advance. We do not think, however, that, even by construction, such provision of the law can be made applicable to the facts in this case. The note specifically provides that the monthly payments are principal, not interest, and further provides for "interest from date at the rate of 10 per cent. per annum, payable semi-annually until paid; any interest unpaid and past due shall draw interest at 10 per cent. per annum from maturity until paid." Neither the law authorizing the reservation of interest in advance for one year nor any other theory could make the monthly payments lawfully apply to interest, and manifestly such could not be done, in view of the foregoing positive provisions in the note to the contrary and for the further reason that such payments would far exceed the interest.

It is the uniform policy of the courts not to permit an act forbidden or penalized by statute to be done either directly or indirectly. This court will not uphold any shift or device by which the lender may receive more than 10 per cent. per annum for the use or forbearance of money. The Supreme Court of Missouri very aptly and briefly defines the test of usury in Kreibohm v. Yancey, 154 Mo. 85, 55 S. W. 266:

"The test of usury in a contract is whether it would, if performed, result in securing a greater rate of profit on the subject matter than is allowed by law."

If the note, payable to the defendant, does not show a contract for usurious interest on its face, then our schooling is at fault, and we are unable, when given both the major and minor premises, to write out the conclusion. The defendant cannot say that he did not authorize the stipulation. It was in the note received and accepted by him. Aetna Building & Loan Ass'n v. Harris et al., 67 Okla. 257, 170 Pac. 700.

The note just discussed shows conclusively on its face that the contract was usurious, and we have held that the defendant cannot escape responsibility for the other acts of his agent in connection with the loan. We now proceed to discover just how much above the lawful amount the defendant, under the entire contract made through Burt, was expected to pay, if he complied with the letter of the notes and mortgages. If by the contract it had been agreed for the plaintiffs to use the whole of the $2,500 for three years, the defendant could lawfully have contracted for $750 interest, but, plaintiffs being required to return from time to time parts of the original principal, the defendant, as we have shown, could not lawfully contract for interest to be paid on such amounts after the time for their payment except in case of default in such payments. We have found the unauthorized interest so contracted for to be $71.25, which deducted from $750, leaves $678.75 as the interest which defendant could have lawfully collected in case the principal had been repaid pursuant to the contract. We are assuming that only $2,500 was furnished plaintiffs, as we have held that plaintiffs were under no legal obligation to pay to the agent of defendant "commission" which should have been paid by defendant. Of course, whether $2,500 or $2,650, the face of the note, was furnished, would not affect the question of such note being usurious on its face. Holding, as we do, that the $150 reserved by Burt and the note and mortgage to Burt for $150 were parts of one usurious transaction, we find that, for use of the $2,500 for seven months and for the use of the balances thereon for the respective periods of time up to the expiration of three years, the plaintiffs contracted to pay interest for a period of three years at 10 per cent. per annum on two notes aggregating $2,800, and also to pay the "commission" of $300 includ-

ed in such notes. The interest on $2,800 for the time and at the rate named is $840, which, added to the "commission" of $300, makes a total for the use of the money of $1,140. From this last sum substract $678.-75, the amount which we have shown to be lawful, and we have $461.25 as interest contracted for above the lawful amount. The renowned loan merchant of olden Venice, if living, would find that his quondam despised calling had reached the distinction of a fine art. The ancient Shylock openly demanded his pound of flesh; his modern successors, none the less grasping, are more covert, but betray the same consummate cupidity, disguised, however, as a refinement of our present civilization.

While some of the courts have upheld reasonable charges for actual services performed by the agent of the lender, none, so far as we are advised, have gone to the extent of permitting charges unreasonable and unfair, though under the guise of "commission," to stand, but in all such cases have construed the entire negotiations as one contract, and held the same to be usurious when their effect was the contracting to pay more than the highest lawful rate of interest. We think that each business should bear its own expenses, and that money paid for services of the agent of the lender, in procuring a loan, is money paid to the lender or for his benefit, and if, in paying for such services, the borrower contracts to pay a sum or sums in excess of the highest lawful rate of interest, the contract is usurious.

It is urged by the defendant that, where the interest is paid by the sale of the property through legal process, the same does not constitute payment by the borrower. This contention is unsound. If the interest is paid, either voluntarily or from the proceeds of the sale of the borrower's property, it cannot logically be said that the same was not paid by the borrower. The law does not require a showing that the interest was voluntarily paid. If, indeed, it were necessary to show voluntary payment, we may say that the defendant's pleadings set up the written agreement, mentioned hereinbefore, for judgment and sale of the property. This agreement shows that, though the property was sold at sheriff's sale, yet it was sold to pay the judgment and with the consent of the plaintiffs.

It is well settled that, when a contract is originally usurious, the taint of usury attaches to all subsequent transactions in connection therewith, and even to a judgment founded upon such usurious transaction; that, where a statute authorizes the recovery of interest paid on a usurious contract, the same may be recovered, notwithstanding the

payment was made in pursuance of a judgment into which the usurious contract had become merged. The fact that the defendant had agreed to the judgment does not matter. Such an agreement is but another transaction in furtherance of the original unlawful contract. In Wood v. Todd, 3 Baxt. (Tenn.) 89, it is said:

"It follows, that, when a judgment was confessed by Todd, the question of usury was not, in fact, involved, nor was he bound to make the question, but he had the right to let the judgment go, and reserve the right to resort to a separate action of debt for the amount of usury already paid."

In Kendig v. Marble, 55 Iowa, 386, 7 N. W. 630, it is said:

"The law will permit no device to cover and protect a usurious contract. If a judgment by confession, or otherwise, be a part of such device intended to prevent the disclosure of the real character of the contract, it will not bind the parties. If the law were otherwise, the usurer could with little trouble defeat the statute," etc.

Also see Long v. Moore, 59 Tex. Civ. App. 579, 126 S. W. 345; Sherley v. Trabue, 85 Ky. 71, 2 S. W. 656; Equitable Loan & Inv. Co. v. Smith (Ky.) 65 S. W. 609; Richter v. Burdock, 257 Ill. 410, 100 N. E. 1063.

From the principles just enunciated and under the authorities cited, it follows that defendant's contention as to the judgment in the foreclosure proceedings being res adjudicata also falls. The action for twice usurious interest paid is independent, and exists irrespective of whether or not a suit is brought on the usurious contract by the holder of the same. Even if such interest is paid prior to the complete extinction of the indebtedness and before a suit is brought thereon, such right of action would not be lost by failure to set up the same by way of cross-action. Like any other cause of action, it can be brought at any time within the limitation imposed by statute. It has been held in an opinion of this court by the late Mr. Justice Brown, Miller v. Oklahoma State Bank, 53 Okla. 616, 157 Pac. 767, that where usurious interest has been paid before suit, the same cannot be set off in an action upon such contract, but must be the subject of an independent action. Such has been the undeviating holding of this court. The Session Laws of 1916 appear to change the rule laid down by Mr. Justice Brown to the extent of permitting the defendant in an action brought by the holder of a usurious contract to plead interest paid as a set-off, but the defendant is not required to do so by the statute. A further and complete answer to such contention of the defendant lies in the axiomatic proposi-

tion that no action or cross-action can accrue for twice the usurious interest paid until such interest is actually paid. In the case at bar, only a small part of the interest was paid before the rendition of the judgment in foreclosure proceedings. The plea of res adjudicata is altogether without merit.

We next consider the proposition of the defendant that plaintiffs' cause of action is barred by limitation. The original action in this case was begun January 6, 1915. The notes were due May 26, 1912. The judgment was paid by proceeds of sale of the property May 12, 1913. The Constitution with reference to usury, among other things, provides:

"In case a greater rate of interest has been paid, the person by whom it has been paid, or his legal representatives, may recover from the person, firm, or corporation taking or receiving the same, in an action in the nature of an action of debt, twice the amount of the interest so paid: Provided, such action shall be brought within two years after the maturity of such usurious contract." Article 14, § 3.

In section 1005, Rev. Laws 1910, will be found the same language and such is at present both the constitutional and statutory law of this state. Section 4660, Rev. Laws 1910, reads:

"If, when a cause of action accrues against a person, he be out of the state, or has absconded or concealed himself, the period limited for the commencement of the action shall not begin to run until he comes into the state, or while he is so absconded or concealed: and if, he depart from the state, or abscond, or conceal himself, the time of his absence or concealment shall not be computed as any part of the period within which the action must be brought."

It is admitted that the defendant is a nonresident of the state, being absent from the state at the time the cause of action accrued, and since continuously absent. It is contended by defendant that the contract matured May 26, 1912, the date when the notes became due, and that, the action of the plaintiffs not being lodged until January 6, 1915, limitation had run against the action. The plaintiffs respond by saying that no cause of action accrued until the contract was discharged and the usurious interest paid; that it was not the intention of our lawmakers to make it impossible for one who has paid usurious interest after the expiration of two years from the time the note evidencing the contract was due to maintain an action for the recovery authorized by statute. They also urge that the discharge of the contract is its maturity as contemplated by the statute. Plaintiffs further contend that, even if it should be held that limitation runs from the due date of the note, the limitation is tolled by the provisions of section 4660, supra, on account of the absence of the defendant, and does not begin to run until he comes under the operation of the statute by coming into the state. The defendant urges that the limitation is a part of the remedy, and that, notwithstanding absence and nonresidence, the action is absolutely barred.

Assuming for the present that by "maturity of the usurious contract" is meant the due date of the notes, it is apparent that in this case the cause of action is barred unless the time is tolled on account of the absence of the defendant from the state. However, it has been held in a number of cases by the Supreme Court of Oklahoma Territory, on principle, and with the support of the highest judicial authority, including the Supreme Court of the United States, that a statute of limitation does not run in favor of one against whom a cause of action exists until the case comes under the operation of the laws of the jurisdiction in which the statute is invoked, and hence does not run in favor of a nonresident until he comes into such jurisdiction and under the operation of such laws. Richardson v. Mackey, 4 Okla. 328, 46 Pac. 546; Keagy v. Wellington National Bank, 12 Okla. 33, 69 Pac. 811. In the cases cited the causes of action arose in other jurisdictions. It may be urged that, when a cause of action arises in this state the case is under the operation of our laws, notwithstanding nonresidence of the person against whom the cause arises, but we think that it cannot be said that such a case is entirely under the operation of our laws unless the courts of this state have the means of acquiring jurisdiction of the parties. True, our courts would have jurisdiction of the cause, but, under the comity of states and under the federal Constitution, the courts of any other state could hear and determine the same, if jurisdiction of person of the defendant could be obtained. This court has also held that nonresidents as well as residents come under the provisions of section 4660, supra, and that absence from the state shall not be computed in time allowed for bringing actions, notwithstanding that such absence is due to nonresidence. St. L. & S. F. Ry. Co. v. Keiffer, 48 Okla. 434, 150 Pac. 1026; St. L. & S. F. Ry. Co. v. Taliaferro, 67 Okla. 37, 168 Pac. 788. In the case last cited Mr. Justice Kane holds that the statutes of limitation begin to run from the time when summons can be served within the state and a valid personal judgment had which can be enforced in a mode provided by law. The principle announced was applied to a nonresident railway corpor-

ation having agents in the state upon whom, under our statute, summons could be served having the effect of personal service on such railway corporation. In the instant case, the defendant being a nonresident, and at all times absent from the state, with no agents in the state upon whom, under the law, service could be had, the statute of limitation was never in operation as to the cause of action against him.

But it is urged that the cause of action in the present case arose because of a special statute providing a remedy which did not exist at common law, and that therefore the limitation is a part of the remedy, and follows it into any forum where action may be lodged. At common law an action of debt could be maintained to recover interest paid in excess of the legal rate. Our enactment merely enlarges the common-law remedy. The nature of the remedy is specifically preserved; it being provided that the remedy is by "an action in the nature of an action for debt." The reasonable inference is that it was the intention of the lawmakers that the same rules with reference to tolling the statute of limitation should apply as obtains in any other action for debt. In this connection we call attention to section 2948, Rev. Laws 1910, which reads:

"The rule of the common law, that statutes in derogation thereof are to be strictly construed, has no application to the laws of this state, which are to be liberally construed with a view to effect their objects and to promote justice."

It is evident that the statute in question is to be construed, not strictly, but liberally, with a view to effect its objects and to promote justice. The common law is not such a monarch that the duly accredited representatives of the people must stand in awe of its stern mandates. It deserves respect as the garnered wisdom of the ages, but its principles came by gradual development and, as a result of progressive departures from existing customs. Must our lawmakers and the courts, with oriental devotion, live only by worship of the ancestral glories of the law? If so, then stagnation follows, and the stream of progress must cease to flow.

It is urged by defendant that the law authorizing the recovery of twice the amount of usurious interest paid is constitutional, and does not contemplate the modifying provisions of section 4660, supra, tolling the limitation in case of absence from the state. The remedy is authorized by the Constitution, and is now both constitutional and statutory, but we have a right to assume that, in naming the time within which the action shall be brought, it was contemplated that such limitation should be modified by the same tolling provision which applied to other causes of action. Added force is given to this suggestion by section 2 of the Schedule to the Constitution, which reads:

"All laws in force in the territory of Oklahoma at the time of the admission of the state into the Union, which are not repugnant to this Constitution, and which are not locally inapplicable, shall be extended to and remain in force in the state of Oklahoma until they expire by their own limitation or are altered or repealed by law."

Section 4660, supra, was a part of the law of the territory at the time of adopting the Constitution, and has remained a part of the law of the state since such time and up to the present. It is not repugnant to the Constitution in any respect. The section is general, and by its terms applies to any cause of action, to a statutory as well as a common-law action. The limitation provided for actions for the recovery of usurious interest is not dissimilar to, and is in pari materia with, other provisions as to time within which other actions may be brought. The object of the usury law was to promote justice among men and to protect necessitous citizens from the avarice of those who are more fortunate in the possession of money, from nonresidents as well as residents of the state. Would its beneficent objects be served and justice be promoted by giving non resident lenders of money an advantage over residents engaged in the same business or by refusing relief to citizens of the state, when the opportunity is presented, against nonresidents on the same terms as against residents? If this court should so hold, it would result that those, bent on evading the usury laws, would procure so-called nonresident principals in whose names loans would be made, and the objects of the law would be defeated.

Section 5281, Rev. Laws 1910, creates a remedy for wrongful death which did not exist at common law, and provides that "the action must be brought within two years." Such section, we believe, has not been construed by this court in relation to the tolling of the time, because of absence from the state, within which such action may be brought. This identical question was, however, presented and passed upon by the Supreme Court of Minnesota in an able opinion by Mr. Chief Justice Start of that court. Casey v. American Bridge Co., 116 Minn. 461, 134 N. W. 111, 38 L. R. A. (N. S.) 521.

The plaintiff in that case brought action against the bridge company on account of death of her husband, alleged to have resulted from the wrongful act of the defendant while constructing a bridge in Oklahoma. More than two years had elapsed since

the death, and the defendant, a corporation, nonresident of Oklahoma, set up the limitation in the section as to time within which the action might be brought as a bar. The court construed the section of our statute which creates the remedy, in connection with section 4660, supra, and held that the limitation was modified by the tolling provisions of section 4660, and that the cause of action was not barred. The court said that the two sections were each parts of our Code of Civil Procedure, but the decision, in the main hinged on other reason showing that the respective sections were in pari materia. Sections 4660 and 5281, Rev. Laws 1910, are identical with paragraphs 21 and 435, respectively, of the Code of 1893. The court, in rendering the opinion, cited the Code of 1893. We quote as follows:

"It is true that, where a right of action is given by statute, which did not exist at common law, and the statute giving the right of action also fixes the time within which it may be enforced, such time limit is a condition or limitation upon the right, which will control, no matter in what form the action is brought. Negaubauer v. Great Northern R. Co., 92 Minn. 184. 104 Am. St Rep. 674, 99 N. W. 620, 2 Ann. Cas. 150. The conclusion, however, that the condition is not qualified by the provisions of section 21 does not logically or otherwise follow from the premises for the conclusion assumes the very question to be decided; that is, whether section 21 qualifies the time limit or condition of section 435"

Continuing, the court further says:

"There is, then, nothing in the language of the respective sections indicating any reason why the tolling provision of section 21 should not apply to section 135. Why, then, should an exception be added, by construction, to section 21, so as to exclude from its express provision the cause of action given by section 435? Why should not the widow have the same fair opportunity to bring her action for damages sustained by the death of her husband by the wrongful act or neglect of another after the defendant comes into the state as she would have if her cause of action were for the loss of a mule killed by the wrongful act or neglect of another? The fact that the action for the death of her husband is a statutory one, and the action for loss of the mule is a common-law one, does not answer the question, for it relates, not to the creation of the cause of action, but to the construction of the tolling provisions of section 21."

Under the admitted facts in this case as to nonresidence and absence, the action was not barred by limitation. This holding would render it unnecessary, so far as a final determination of this appeal is concerned, to decide whether or not the time of the limitation in this case would run from the date

of the discharge of the usurious contract, but, as the question is properly raised and is important, we will consider the same.

It is provided by the Constitution, and also by section 1005, Rev. Laws 1910, that the action arising from the payment of usurious interest "shall be brought within two years after the maturity of the usurious contract." Our usury law is fashioned after the federal act with slight departures, among which is the provision concerning the limitation of time, the federal statute providing for the action to be brought within "two years from the time the usurious transaction occurred." It was well known at the time of the framing of our Constitution that under the federal law it was held by the courts that each payment of usury constituted a separate transaction, and was barred in two years from the time of each respective payment. This matter is discussed in Ardmore State Bank v. Lee, 61 Okla. 169, 159 Pac. 903, and we indorse the conclusion in that case that one of the objects of this departure was to allow an action, after the last payment of usurious interest, to be maintained for the entire amount paid, irrespective of the fact that more than two years had elapsed since some of the payments were made. In that case the note had been executed, and a new due date fixed. It was paid before the expiration of such extension, and it was held that the two-year limitation began to run from the date of such payment. It is said, as a matter of dictum, however, that "if the note had not been paid before its maturity, the limitation would have set in from the date of the expiration of the last extension." It strikes us that, if the act of the borrower in paying the note before it was due matured the contract, the conduct of the lender in waiting till after the date expressed in the note and then receiving the payment thereof would merge the original due date into the time of actual payment, and the contract could be said to have actually matured at such time. If the departure from the federal statute was for the benefit of the borrower, it cannot be said that, in a case where the borrower paid the note in full after the expiration of two years from the date it was due, it was the intention of the law to bar him of the remedy given. Such a construction would work a greater hardship than the construction placed on the federal statute, as, under such statute, the debtor would have the right to sue for any interest paid within two years after the particular payment. It is said in Citizens' State Bank v. Strahan et al., 59 Okla. 215, 158 Pac. 378:

"The defendants in error having failed to institute a suit within two years from the date of said payments, the cause of action to recover double the usury paid on account of said two payments is therefore barred by the statute of limitations of two years as provided by the act creating the remedy."

In neither of the cases cited was the question being now considered squarely presented and passed upon, as the determination of the particular question was not in either case necessary.

Ordinarily we speak of the time when a note is due as the maturity of the note. Speaking precisely, however, it is the time that matures, and not the note. Maturity in such case is the fullness or completness of the time. We speak of the maturity of plans when they are complete, have borne fruit, or are ended. A man's maturity is when he has become full grown, physically or mentally, or both. The maturity of our hopes refers to the realization of their objects. It woud not be inaccurate to say that a contract had reached its maturity when its objects had been attained, the benefits to be derived therefrom received.

The constitutional provision does not read "within two years after the time when the note or instrument evidencing the usurious contract becomes due." If such had been the intention, it could have been so expressed. In construing the provision, we must look to the words themselves, to the object of the law, and to the facts and circumstances surrounding its adoption. If two constructions may be placed upon the language used, that construction more nearly in consonance with the objects in view and the circumstances which called forth the enactment should be followed. Before the adoption of the Constitution our people were without adequate protection from the avarice of exacting money lenders. The demand for such protection was widespread. Under such circumstances the Constitution makers engaged to shape our organic law to meet the demands. If we hold that the maturity of the usurious contract refers necessarily to the due date of the note, then, if a debtor were so unfortunate as not to be able to discharge the obligation for more than two years after such date, and the creditor refused to make extensions, the debtor, though he afterwards discharged the contract in full, could not avail himself of the remedy given. Thereby the law would be made to discriminate in favor of the more prosperous, those who happen to be able to meet their obligations promptly, and against those whom misfortune had overtaken and for whose benefit the relief primarily was intended. No cause of action can accrue until the usurious interest is actually paid in money or its equivalent. Each payment on the usurious contract is a partial realization thereon; hence maturity to the extent of the amount paid. After payment in full there would be full realization and complete maturity. If interest were included in any payment, an action for twice the amount thereof could be brought within two years from the time of such payment; but, in case of subsequent payments of interest, all former payments would merge with the last made. A full discharge of the contract, therefore, merges all payments of usurious interest, the contract wholly matures, and a cause of action at once accrues for twice the whole amount of interest so paid. The limitation under consideration is one running in favor of the lender, and is somewhat analogous to a limitation running in favor of the debtor, the analogy being that, in the case of a debtor, each payment made is a recognition of the debt, and the limitation runs afresh from the time of such payment, and, in the case of a lender, each payment received is a recognition of the usurious contract with the attendant liability, and the limitation starts anew from the time of receiving such payment.

We think, and so hold, that an action for twice all the interest paid on a usurious contract can be brought within two years from the time of the full payment and discharge of the contract or from the time of the last payment of interest thereon. Such being our holding, the action in the instant case was brought within less than two years after the maturity of the usurious contract.

The plaintiffs ask judgment for $2,361.42, with interest at 6 per cent. per annum from May 12, 1913, the date of the final payment of the principal and interest of the usurious contract. Under the facts, as admitted by the parties, the plaintiffs, before the filing of the foreclosure suit by the defendant, paid $350 on the principal and $396.40 on the interest of the note made to the defendant. In discharge of the judgment, the defendant received $2,899.08, exclusive of taxes paid by him, costs, and attorney's fees. Therefore the total paid on such note, exclusive of taxes, costs, and attorney's fees, is $3,645.48. We have held that the note for $2,650 to defendant is usurious on its face. Assuming that the plaintiff received the full amount of $2,650 principal, shown in the face thereof, and substracting such sum from $3,645.48 we have $995.48 interest paid. The plaintiff would be entitled to recover twice such interest, or $1,990.96. The pleadings of the defendant show that Burt received $431.95 from the sale of the property on the note made to him. Add to this $150 retained by

him out of the $2,650 originally sent to him by the defendant, and the sum is $581.95. If we hold as a matter of law that, for the purpose of this appeal, Burt's agency for the defendant is conclusively established, the defendant, if the amount of relief asked for justified it, could also recover twice this sum of $1,163.90, which, added to $1,990.96, would make $3,154.86 which plaintiffs were entitled to recover, if they had not asked for a less sum in their petition. The only possible theory, upon which we should remand this cause for new trial, instead of directing judgment, is that the defendant should be permitted to rebut the proof of Burt's agency. This agency is so well established that it is not likely that the same could be satisfactorily disproved. However, the note made to the defendant being usurious on its face, the plaintiffs clearly are entitled to have judgment rendered for twice the usurious interest paid on that particular note, without regard to the question of Burt's agency. As the expenses and burdens of a new trial will bear heavily upon each of the parties, we have decided that substantial justice may be done by the rendition of such a judgment.

This cause is reversed and remanded, with directions to the trial court to render judgment for the plaintiffs and against the defendant in the sum of $1,990.96, with interest at the rate of 6 per cent. per annum from May 12, 1913, and for costs of this court and of the trial court.

### On Motion for Rehearing.

The defendant in error in the motion for rehearing presents no controlling decision or statute which is in conflict with the views expressed in the opinion, and each question decisive of the case submitted by counsel was passed upon by this court.

Counsel calls our attention to Talbot v. First National Bank, 185 U. S. 172, 22 Sup. Ct., 612, 46 L. Ed. 857, as supporting the proposition that a sale on execution of the debtor's property is not a payment of usury as contemplated by the statute. In the case cited a foreclosure suit was brought against the debtor, and the court, finding that illegal interest had been contracted for, deducted the excess over the legal rate and rendered judgment for the principal sum and interest at the legal rate. The property sold was applied to the payment of the judgment for such principal and lawful interest. It was held that interest in excess of the lawful amount "may be relinquished and recovery be had of the legal rate." The court further observed:

"Indeed, it is a contradiction to say that interest may be recovered back which has not been paid, and whether it is relinquished before suit or deducted by order of the court before judgment, it is in neither case paid by the judgment or by the satisfaction of the judgment."

It is nowhere hinted in the opinion relied upon that, if the judgment had been for more than the principal and interest at the lawful rate, the satisfaction of the judgment from the proceeds of the sale of the debtor's property would not have constituted payment of usurious interest. In the case at bar the unlawful interest was included in the judgment, and was paid through sale of property of the plaintiffs in error.

The defendant in error further complains because this court, in its opinion, assumed that the answer denying agency was not verified. Neither of the briefs filed show the answers to be verified. The brief of the defendant in error purports to set out in totidem verbis the answer filed, but does not show verification. Under rule 26 of this court (47 Okla. x, 165 Pac. ix) it was his duty, if the abstract of plaintiff in error was incomplete, to set forth a counter abstract correcting omissions or inaccuracies. This court therefore had the right to assume that the answer was not verified, but whether or not the defendant in error shall be held strictly to the rule is immaterial. The undisputed evidence establishes the agency alleged, and, further, the opinion shows that in directing judgment this court did not consider the commission paid to the agent of the defendant, but directed judgment on the ground that the original note which was received and accepted by the defendant in error, thus brought to his knowledge, was usurious on its face; the judgment directed being only for twice the interest paid by plaintiffs in error on such note.

The petition for rehearing should be denied.

By the Court: It is so ordered.